Justice Kennedy
delivered the opinion of the Court.
The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. §§ 1961-1968 (2000 ed. and Supp. III), prohibits certain conduct involving a “pattern of racketeering activity.” §1962 (2000 ed.). One of RICO’s enforcement mechanisms is a private right of action, available to “[a]ny person injured in his business or property by reason of a violation” of RICO’s substantive restrictions. § 1964(c).
In Holmes v. Securities Investor Protection Corporation, 503 U. S. 258, 268 (1992), this Court held that a plaintiff may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff’s injury. The instant case requires us to apply the principles discussed in Holmes to a dispute between two. competing businesses.
I
Because this case arises from a motion to dismiss, we accept as true the factual allegations in the amended complaint. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163, 164 (1993).
Respondent Ideal Steel Supply Corporation (Ideal) sells steel mill products along with related supplies and services. It operates two store locations in New York, one in Queens and the other in the Bronx. Petitioner National Steel Sup *454 ply, Inc. (National), owned by petitioners Joseph and Vincent Anza, is Ideal’s principal competitor. National offers a similar array of products and services, and it, too, operates one store in Queens and one in the Bronx.
Ideal sued petitioners in the United States District Court for the Southern District of New York. It claimed petitioners were engaged in an unlawful racketeering scheme aimed at “gaining] sales and market share at Ideal’s expense.” App. 7. According to Ideal, National adopted a practice of failing to charge the requisite New York sales tax to cash-paying customers, even when conducting transactions that were not exempt from sales tax under state law. This practice allowed National to reduce its prices without affecting its profit margin. Petitioners allegedly submitted fraudulent tax returns to the New York State Department of Taxation and Finance in an effort to conceal their conduct.
Ideal’s amended complaint contains, as relevant here, two RICO claims. The claims assert that petitioners, by submitting the fraudulent tax returns, committed various acts of mail fraud (when they sent the returns by mail) and wire fraud (when they sent them electronically). See 18 U. S. C. §§1341, 1343 (2000 ed., Supp. III). Mail fraud and wire fraud are forms of “racketeering activity” for purposes of RICO. § 1961(1)(B). Petitioners’ conduct allegedly constituted a “pattern of racketeering activity,” see § 1961(5) (2000 ed.), because the fraudulent returns were submitted on an ongoing and regular basis.
Ideal asserts in its first cause of action that Joseph and Vincent Anza violated § 1962(c), which makes it unlawful for “any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity or collection of unlawful debt.” The complaint states that the Anzas’ goal, which *455 they achieved, was to give National a competitive advantage over Ideal.
The second cause of action is asserted against all three petitioners. It alleges a violation of § 1962(a), which makes it unlawful for any person who has received income derived from a pattern of racketeering activity “to use or invest” that income “in acquisition of any interest in, or the establishment or operation of,” an enterprise engaged in or affecting interstate or foreign commerce. As described in the complaint, petitioners used funds generated by their fraudulent tax scheme to open National’s Bronx location. The opening of this new facility caused Ideal to lose “significant business and market share.” App. 18.
Petitioners moved to dismiss Ideal’s complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The District Court granted the Rule 12(b)(6) motion, holding that the complaint failed to state a claim upon which relief could be granted. The court began from the proposition that to assert a RICO claim predicated on mail fraud or wire fraud, a plaintiff must have relied on the defendant’s misrepresentations. Ideal not having alleged that it relied on petitioners’ false tax returns, the court concluded Ideal could not go forward with its RICO claims.
Ideal appealed, and the Court of Appeals for the Second Circuit vacated the District Court’s judgment. 373 F. 3d 251 (2004). Addressing Ideal’s § 1962(c) claim, the court held that where a complaint alleges a pattern of racketeering activity “that was intended to and did give the defendant a competitive advantage over the plaintiff, the complaint adequately pleads proximate cause, and the plaintiff has standing to pursue a civil RICO claim.” Id., at 263. This is the case, the court explained, “even where the scheme depended on fraudulent communications directed to and relied on by a third party rather than the plaintiff.” Ibid.
The court reached the same conclusion with respect to Ideal’s § 1962(a) claim. It reasoned that Ideal adequately *456 pleaded its claim because it alleged an injury by reason of petitioners’ use and investment of racketeering proceeds, “as distinct from injury traceable simply to the predicate acts of racketeering alone or to the conduct of the business of the enterprise.” Id., at 264.
We granted certiorari. 546 U. S. 1029 (2005).
II
Our analysis begins — and, as will become evident, largely ends — with Holmes. That case arose from a complaint filed by the Securities Investor Protection Corporation (SIPC), a private corporation with a duty to reimburse the customers of registered broker-dealers who became unable to meet their financial obligations. SIPC claimed that the petitioner, Robert Holmes, conspired with others to manipulate stock prices. When the market detected the fraud, the share prices plummeted, and the “decline caused [two] broker-dealers’ financial difficulties resulting in their eventual liquidation and SIPC’s advance of nearly $13 million to cover their customers’ claims.” 503 U. S., at 262, 263. SIPC sued on several theories, including that Holmes participated in the conduct of an enterprise’s affairs through a pattern of racketeering activity in violation of § 1962(c) and conspired to do so in violation of § 1962(d).
The Court held that SIPC could not maintain its RICO claims against Holmes for his alleged role in the scheme. The decision relied on a careful interpretation of § 1964(c), which provides a civil cause of action to persons injured “by reason of” a defendant’s RICO violation. The Court recognized the phrase “by reason of” could be read broadly to require merely that the claimed violation was a “but for” cause of the plaintiff’s injury. Id., at 265-266. It rejected this reading, however, noting the “unlikelihood that Congress meant to allow all factually injured plaintiffs to recover.” Id., at 266.
*457 Proper interpretation of § 1964(c) required consideration of the statutory history, which revealed that “Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, §4 of the Clayton Act.” Id., at 267. In Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U. S. 519 (1983), the Court held that “a plaintiff’s right to sue under § 4 required a showing that the defendant’s violation not only was a ‘but for’ cause of his injury, but was the proximate cause as well.” Holmes, supra, at 268 (citing Associated Gen. Contractors, supra, at 534). This reasoning, the Court noted in Holmes, “applies just as readily to § 1964(c).” 503 U. S., at 268.
The Holmes Court turned to the common-law foundations of the proximate-cause requirement, and specifically the “demand for some direct relation between the injury asserted and the injurious conduct alleged.” Ibid. It concluded that even if SIPC were subrogated to the rights of certain aggrieved customers, the RICO claims could not satisfy this requirement of directness. The deficiency, the Court explained, was that “the link is too remote between the stock manipulation alleged and the customers’ harm, being purely contingent on the harm suffered by the broker-dealers.” Id., at 271.
Applying the principles of Holmes to the present case, we conclude Ideal cannot maintain its claim based on § 1962(c). Section 1962(c), as noted above, forbids conducting or participating in the conduct of an enterprise’s affairs through a pattern of racketeering activity. The Court has indicated the compensable injury flowing from a violation of that provision “necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.” Sedima, S. P. R. L. v. Imrex Co., 473 U. S. 479, 497 (1985).
Ideal’s theory is that Joseph and Vincent Anza harmed it by defrauding the New York tax authority and using the *458 proceeds from the fraud to offer lower prices designed to attract more customers. The RICO violation alleged by Ideal is that the Anzas conducted National’s affairs through a pattern of mail fraud and wire fraud. The direct victim of. this conduct was the State of New York, not Ideal. It was the State that was being defrauded and the State that lost tax revenue as a result.
The proper referent of the proximate-cause analysis is an alleged practice of conducting National’s business through a pattern of defrauding the State. To be sure, Ideal asserts it suffered its own harms when the Anzas failed to charge customers for the applicable sales tax. The cause of Ideal’s asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State). The attenuation between the plaintiff’s harms and the claimed RICO violation arises from a different source in this case than in Holmes, where the alleged violations were linked to the asserted harms only through the broker-dealers’ inability to meet their financial obligations. Nevertheless, the absence of proximate causation is equally clear in both cases.
This conclusion is confirmed by considering the directness requirement’s underlying premises. See 503 U. S., at 269-270. One motivating principle is the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action. See id., at 269 (“[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff’s damages attributable to the violation, as distinct from other, independent, factors”). The instant case is illustrative. The injury Ideal alleges is its own loss of sales resulting from National’s decreased prices for cash-paying customers. National, however, could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud. It may have received a cash inflow from some other source or concluded that the additional sales would justify a smaller profit margin. Its lowering of prices *459 in no sense required it to defraud the state tax authority. Likewise, the fact that a company commits tax fraud does not mean the company will lower its prices; the additional cash could go anywhere from asset acquisition to research and development to dividend payouts. Cf. id., at 271 (“The broker-dealers simply cannot pay their bills, and only that intervening insolvency connects the conspirators’ acts to the losses suffered by the nonpurchasing customers and general creditors”).
There is, in addition, a second discontinuity between the RICO violation and the asserted injury. Ideal’s lost sales could have resulted from factors other than petitioners’ alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal’s lost sales were the product of National’s decreased prices. Cf. id., at 272-273 (“If the nonpurchasing customers were allowed to sue, the district court would first need to determine the extent to which their inability to collect from the broker-dealers was the result of the alleged conspiracy to manipulate, as opposed to, say, the broker-dealers’ poor business practices or their failures to anticipate developments in the financial markets”).
The attenuated connection between Ideal’s injury and the Anzas’ injurious conduct thus implicates fundamental concerns expressed in Holmes. Notwithstanding the lack of any appreciable risk of duplicative recoveries, which is another consideration relevant to the proximate-cause inquiry, see id., at 269, these concerns help to illustrate why Ideal’s alleged injury was not the direct result of a RICO violation. Further illustrating this point is the speculative nature of the proceedings that would follow if Ideal were permitted to maintain its claim. A court considering the claim would need to begin by calculating the portion of National’s price drop attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of Ideal’s lost sales attributable to the relevant part of the price drop. *460 The element of proximate causation recognized in Holmes is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws.
The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims. See id., at 269-270 (“[D]irectly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely”). Again, the instant case is instructive. Ideal accuses the Anzas of defrauding the State of New York out of a substantial amount of money. If the allegations are true, the State can be expected to pursue appropriate remedies. The adjudication of the State’s claims, moreover, would be relatively straightforward; while it may be difficult to determine facts such as the number of sales Ideal lost due to National’s tax practices, it is considerably easier to make the initial calculation of how much tax revenue the Anzas withheld from the State. There is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly.
The Court of Appeals reached a contrary conclusion, apparently reasoning that because the Anzas allegedly sought to gain a competitive advantage over Ideal, it is immaterial whether they took an indirect route to accomplish their goal. See 373 F. 3d, at 263. This rationale does not accord with Holmes. A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant’s aim was to increase market share at a competitor’s expense. See Associated Gen. Contractors, 459 U. S., at 537 (“We are also satisfied that an allegation of improper mo *461 tive ... is not a panacea that will enable any complaint to withstand a motion to dismiss”). When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff’s injuries. In the instant ease, the answer is no. We hold that Ideal’s § 1962(c) claim does not satisfy the requirement of proximate causation.
Petitioners alternatively ask us to hold, in line with the District Court’s decision granting petitioners’ motion to dismiss, that a plaintiff may not assert a RICO claim predicated on mail fraud or wire fraud unless it demonstrates it relied, on the defendant’s misrepresentations. They argue that RICO’s private right of action must be interpreted in light of common-law principles, and that at common law a fraud action requires the plaintiff to prove reliance. Because Ideal has not satisfied the proximate-cause requirement articulated in Holmes, we have no occasion to address the substantial question whether a showing of reliance is required. Cf. 503 U. S., at 275-276.
Ill
The amended complaint also asserts a RICO claim based on a violation of § 1962(a). The claim alleges petitioners’ tax scheme provided them with funds to open a new store in the Bronx, which attracted customers who otherwise would have purchased from Ideal.
In this Court petitioners contend that the proximate-cause analysis should function identically for purposes of Ideal’s § 1962(c) claim and its § 1962(a) claim. (Petitioners also contend that “a civil RICO plaintiff does not plead an injury proximately caused by a violation of § 1962(a) merely by alleging that a corporate defendant reinvested profits back into itself,” Brief for Petitioners 20, n. 5, but this argument has not been developed, and we decline to address it.) It is true that private actions for violations of § 1962(a), like actions for violations of § 1962(c), must be asserted under *462 § 1964(c). It likewise is true that a claim is cognizable under § 1964(c) only if the defendant’s alleged violation proximately caused the plaintiff’s injury. The proximate-cause inquiry, however, requires careful consideration of the “relation between the injury asserted and the injurious conduct alleged.” Holmes, supra, at 268. Because § 1962(c) and § 1962(a) set forth distinct prohibitions, it is at least debatable whether Ideal’s two claims should be analyzed in an identical fashion for proximate-cause purposes.
The Court of Appeals held that Ideal adequately pleaded its § 1962(a) claim, see 373 F. 3d, at 264, but the court did not address proximate causation. We decline to consider Ideal’s § 1962(a) claim without the benefit of the Court of Appeals’ analysis, particularly given that the parties have devoted nearly all their attention in this Court to the § 1962(c) claim. We therefore vacate the Court of Appeals’ judgment with respect to Ideal’s § 1962(a) claim. On remand, the court should determine whether petitioners’ alleged violation of § 1962(a) proximately caused the injuries Ideal asserts.
* * *
The judgment of the Court of Appeals is reversed in part and vacated in part. The case is remanded for further proceedings consistent with this opinion.

It is so ordered.