**SALEH, et al., Plaintiffs,**

v.

**TITAN CORPORATION,
et al., Defendants.**

**Civil Action No. 05–1165 (JR).**

United States District Court,
District of Columbia.

June 29, 2006.

Ari Shlomo Zymelman, Williams & Connolly, Joseph William Koegel, Jr., John F. O'Connor, Jr., Steptoe & Johnson, L.L.P., Shari L. Klevens, McKenna Long & Aldridge LLP, Ellen D. Marcus, Adam L. Rosman, Eric R. Delinsky, Zuckerman Spaeder LLP, Washington, DC, Henry Eric Hockeimer, Jr., Ballard Spahr Andrews & Ingersoll, LLP, Jonathan H. Pyle, Burk Pyle LLC, Philadelphia, PA, for Defendants.

## MEMORANDUM ORDER

ROBERTSON, District Judge.

In this vexed lawsuit,[1] a number of named Iraqi nationals bring allegations of nearly unspeakable acts of torture and other mistreatment by interpreters and interrogators who were civilian employees of American corporations doing contract work for the U.S. military at Abu Ghraib prison in Baghdad. Before this court are five motions to dismiss plaintiffs' third amended complaint ("complaint"), filed on behalf of all the defendants who have been served,[2] and a motion by plaintiffs for summary judgment on one of the defenses interposed by one defendant.

The plaintiffs are twelve named Iraqis, the estate of a thirteenth, and 1050 unnamed Does comprising "classes of persons similarly situated." The lead named plaintiff Saleh is "an individual residing in Sweden and Dearborn, Michigan." The other plaintiffs are all residents of Iraq. Defendants/movants are three individuals, John B. Israel, Adel L. Nakhla, and Ste-

Susan L. Burke, Jonathan H. Pyle, Burke Pyle LLC, Philadelphia, PA, Shereef Akeel, Akeel & Valentine, Birmingam, MI, for Plaintiffs.

1. The adjective refers to an unfortunate history of relations among counsel for plaintiffs in the related case of *Ibrahim v. Titan Corporation*, Civil Action No. 04–1248, and to this case's odyssey from the Southern District of California, to the Eastern District of Virginia, to this court, back to the Eastern District of Virginia, and finally back here on January 24, 2006. That history is not germane to the present motions but is a matter of public record. *See* No. 04–1248, docket entries [26], [32], [34], [35], [52]; and, in the instant case, docket entries [7], [8], [19], [27], and minute entries of 9/16/05 and 10/25/05.

2. Proof of service upon defendant Timothy Duggan was filed on 6/27/06. This memorandum order does not apply to him.

ven A. Stefanowicz, and two corporate government contract firms, CACI Premier Technology, Inc. (together with related corporate entities) and L–3 Communications Titan Corporation (formerly known as The Titan Corporation).

This case is related to the *Ibrahim* case, see note 1, *supra,* because, except for the allegations of conspiracy made in this case, the factual allegations of the two cases are virtually indistinguishable from one another. Both cases involve the same corporate defendants, allegedly doing (or negligently allowing to be done, or failing to prevent) the same kinds of acts, in the same place, at the same time. In *Ibrahim,* I dismissed the plaintiffs' Alien Tort Statute, RICO, and government contracting claims, as well as plaintiffs' common law claims of false imprisonment and conversion, but I allowed their common law claims of assault and battery, wrongful death, intentional infliction of emotional distress and negligence to go forward, finding no merit in the defendants' political question defense and finding that the defendants had not provided enough factual support for their government contractor preemption defense. *Ibrahim v. Titan Corp.,* 391 F.Supp.2d 10 (D.D.C.2005)

Apparently assuming (correctly) that I would treat my *Ibrahim* decision as if it were *stare decisis,* each side in the present case has attempted to distinguish it. Plaintiffs have broken their ATS claim into component parts, added claims of aiding and abetting and conspiracy, added individual defendants, named three putative subclasses of plaintiffs (the "RICO" class, the "common law" class, and the "wrongful death" class), and fashioned legal arguments that were not addressed in *Ibrahim.* CACI and Titan, for their part, have argued that plaintiffs' arguments have laid even their common law claims open to dismissal. For reasons that will be amplified below, however, I find no reason to treat any of the claims and defenses asserted in this case differently from the way they were treated in *Ibrahim.* (The reasoning supporting my rulings in *Ibrahim* is incorporated by reference here.)

1. *Alien Tort Statute*

In *Ibrahim,* I held that, after *Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774 (D.C.Cir.1984), *Sanchez–Espinoza v. Reagan,* 770 F.2d 202 (D.C.Cir.1985), and *Sosa v. Alvarez–Machain,* 542 U.S. 692, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004), it was clear that I had jurisdiction under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, but that the conduct of private parties described by plaintiffs' allegations was not actionable under the ATS's grant of jurisdiction as violative of the law of nations. The plaintiffs in this case, apparently thinking they see daylight in footnote 3 of the *Ibrahim* opinion, have run to it, arguing that the Supreme Court's *Sosa* opinion approved Judge Edwards's view in *Tel–Oren,* 726 F.2d at 781, that torture by private parties would be actionable under the ATS if the private parties were acting under color of law, and alleging that these defendants were indeed acting under color of law. The argument is rejected. *Sanchez–Espinoza* is controlling Circuit precedent and is not cast in doubt by the other cases upon which plaintiff relies.[3] *Sosa* did not overrule that precedent (and *Sosa's* pointed admonition that lower federal courts should be extremely cautious about

---

**3.** The scholarly and persuasive opinion of Judge Schwartz in *Presbyterian Church of Sudan v. Talisman Energy,* 244 F. Supp 2d 289 (S.D.N.Y.2003), involved a Canadian corporation acting under color of Sudanese law and relied heavily upon Second Circuit precedent laid down in *Kadic v. Karadzic,* 70 F.3d 232 (1995), and *Filartiga v. Pena–Irala,* 630 F.2d 876 (1980), both of which involved acts done under color of non-U.S. law.

discovering new offenses among the law of nations certainly cannot be read as an endorsement of Judge Edwards' view in *Tel–Oren* that "the law of nations is not stagnant and should be construed as it exists today among the nations of the world." 726 F.2d at 777). *Sanchez–Espinoza* makes it clear that there is no middle ground between private action and government action, at least for purposes of the Alien Tort Statute.

Plaintiffs' color of law theory is not advanced by their assertions that the defendants aided and abetted official action, Complaint ¶¶ 189, 206, 221, 236, 250, or that they conspired with military personnel, Complaint ¶¶ 183, 201, 216, 231, 245. It is certainly true, *see* [42–1] at 15,[4] that participation in a conspiracy with government actors does not confer government immunities,[5] but in the absence of supporting citation it is difficult to see how conspiratorial behavior, which by definition is secretive, can show the color of law. And the more plaintiffs assert official complicity in the acts of which they complain, the closer they sail to the jurisdictional limitation of the political question doctrine. *See, Gonzalez–Vera v. Kissinger,* 449 F.3d 1260 (D.C.Cir.2006); *Schneider v. Kissinger,* 412 F.3d 190 (D.C.Cir.2005).

### 2. *RICO*

■ I dismissed the RICO claims in *Ibrahim* because allegations of personal injuries alone are not sufficient to meet RICO's standing requirement of some allegation of damage to business or property, 18 U.S.C. § 1964(c). Here, seeking to avoid the same result, the plaintiffs claim that they were victims of predicate acts of robbery, but their allegations—that three

of them were robbed upon their arrest by unnamed American soldiers, complaint ¶¶ 131, 140, 151, or that (upon information and belief) an unnamed employee of Titan stole and never returned a Mercedes automobile owned by an unnamed class member, *id.* ¶ 55—are vague to the point of rumor. Plaintiffs concede that the alleged takings of property occurred at the time of arrest, not during interrogation. They nevertheless insist, [42–1] at 27, that

> only at the time of release from prison did seizure of money and goods become robbery; the initial *taking* does not establish who *stole* it. Regardless of timing, the robberies were as much part of the attempt to intimidate and demean the prisoners as any other act of torture and abuse.

Unfortunately, there is no "artful pleading" exception to the rule that the allegations of a complaint must be taken as true when considering a motion to dismiss. Here, however, even assuming the truth of plaintiffs' allegations that the unnamed persons (maybe American soldiers, maybe not) who arrested the plaintiffs (where? when?) stole their money, jewels and automobiles to intimidate and demean them, all in order to further the unlawful purposes of the vast "torture conspiracy" plaintiffs have conjured, complaint ¶¶ 97–107, the resulting (and quite fantastic) plot line describes a theory of injury causation that is too attenuated for RICO. *Cf. Anza v. Ideal Steel Supply Corp.,* —— U.S. ——, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006).

### 3. *CACI International Inc and CACI, INC.-FEDERAL.*

The leave given plaintiffs to file their (third amended) complaint against three

---

**4.** Citation to an electronic document is to the page number of the original document, rather than the number assigned by the CM/ECF system.

**5.** On this motion to dismiss, plaintiff's allegations of conspiracy are taken as true.

CACI corporate entities [33] was conditional. They were to

> make[ ] allegations as to the individual CACI corporations now lumped together in the proposed third amended complaint as "the CACI Corporate defendants" … specific enough that such allegations may be tested against the requirement of Rule 11 that they "have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

Instead of doing so, plaintiffs simply added a footnote, complaint ¶ 24, explaining that their allegations as to CACI International Inc and CACI, INC.-FEDERAL were now made

> upon information and belief … to connote those instances where Plaintiffs believe the allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Asserting that they have now "alleged facts establishing liability for each of the CACI entities," [41-1] at 41, the plaintiffs have thrown together a number of claims that sound in negligence (knew or should have known, allowed employees to design illegal interrogation, failure to prevent or stop, etc., *see id.* at 42) or agency (CACI International "controlled" CACI-PT and acquired it to meet its own strategic goals, *id.*), none of which, even if proven, would "pierce the corporate veil" so as to make the corporate parents of CACI-PT liable for the torts of CACI-PT. The complaint asserts Alien Tort Statute claims for extrajudicial killing, torture, cruel/inhuman/degrading treatment, war crimes, and crimes against humanity, as well as common law claims for assault and battery, sexual assault, wrongful death, negligent hiring and supervision, and intentional and negligent

infliction of emotional distress. The claims that might be supported by proof of negligence (wrongful death, negligent hiring and supervision, negligent infliction of emotional distress) all are variants of intentional tort claims. Plaintiffs will have a hard enough time establishing CACI-PT's respondeat superior liability for these torts. If they choose to pursue their claims against CACI-PT's corporate parents, they (and their counsel) are on notice that I will permit discovery as to exactly what "evidentiary support" existed for their claims when they filed their (third amended) complaint, and, for those claims asserted upon information and belief, exactly what information they acted upon.

### 4. *Individual defendants*

■ The motions of defendants Israel, Nakhla, and Stefanowicz to dismiss for lack of personal jurisdiction will be granted. None of them lives in the District of Columbia or has meaningful contacts here, and plaintiffs have made no attempt to invoke the District of Columbia's long-arm statute as to any of them. The arguments for personal jurisdiction are that RICO supports nationwide service of process and that the jurisdictional question has already been decided, by the United States District Court for the Eastern District of Virginia. A properly pleaded RICO claim does support nationwide service of process, but these defendants need not respond to a RICO claim that plaintiffs have no standing to pursue. Judge Hilton's referral to this court [44-14] was not an adjudication of the RICO standing issue.

### 5. *Further proceedings*

■ The disposition of the present motions renders this case, and its procedural posture, virtually indistinguishable from *Ibrahim.* Here, as in *Ibrahim,* the next step must be to determine whether the defendants' employees "were essentially

acting as soldiers," *see* No. 04–1248[39] at 16–18. In *Ibrahim,* the defendants moved for summary judgment on that question, after which the parties embarked on an agreed discovery program, No. 04–1248[63]. It will be in the interest of justice, and of the efficient use of litigation resources, for these two cases to be consolidated, *for discovery purposes only.* Defendants will not be required to duplicate the discovery they have provided in *Ibrahim,* if plaintiffs in the instant case are given access to the same discovery, under the terms of the protective order issued in that case, No. 04–1248[66].

\*    \*    \*    \*    \*    \*

For the reasons set forth above and in No. 04–1248[38] it is

ORDERED that the motions of Stephen A. Stefanowicz [36], John B. Israel [38] and Adel Nahkla [39] to dismiss for lack of personal jurisdiction are **granted.** It is

FURTHER ORDERED that the motions of CACI Premier Technology, Inc., CACI International Inc and CACI, INC.-FEDERAL [37] and L–3 Communications Titan Corporation [40] to dismiss for failure to state a claim upon which relief can be granted are **granted** as to Counts One through Fifteen, Thirty and Thirty-one of the Third Amended Complaint [34] and **denied** as to Counts Sixteen through Twenty-nine. It is

FURTHER ORDERED that plaintiffs' motion for summary judgment against Titan Corporation on the government contractor defense [61] is **denied.** And it is

FURTHER ORDERED that the parties meet and confer and present a proposed schedule for further proceedings—an agreed schedule, if possible—within 30 days of the date of this order.