

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2007

# V-Tech Ser Inc v. Street

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5136

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"V-Tech Ser Inc v. Street" (2007). *2007 Decisions.* Paper 1671.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1671

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5136

V-TECH SERVICES, INC.,
                                                Appellant

v.

THOMAS MILTON STREET, SR.; NOTLIM INCORPORATED;
JOHN H. VELARDI, SR.; PHILADELPHIA AIRPORT SERVICES; ENRON
BUILDING SERVICES, INC.; AFFILIATED BUILDING SERVICES, LLC;
GENERAL ASPHALT PAVING COMPANY; U.S. FACILITIES, INC;
BARBARA BROWN; AMERICAN ENVIRONMENTAL CLEANUP CORP., INC.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 04-cv-04457
District Judge:  The Honorable Edmund V. Ludwig

Submitted Under Third Circuit LAR 34.1(a)
January 29, 2007

Before: BARRY, ROTH, <u>Circuit Judges</u>, and DEBEVOISE,[*] <u>District Judge</u>

(Opinion Filed:  February 6, 2007)

OPINION

BARRY, <u>Circuit Judge</u>

---

   [*] The Honorable Dickinson R. Debevoise, Senior District Judge, United States District Court for the District of New Jersey, sitting by designation.

V-Tech Services, Inc. ("V-Tech") appeals from an order of the United States District Court for the Eastern District of Pennsylvania dismissing its complaint for failure to state a claim upon which relief may be granted and declining to exercise jurisdiction over its supplemental state law claims. V-Tech alleges a scheme by defendants to defraud the government by misrepresenting the use of disadvantaged businesses to perform subcontracts at the Philadelphia International Airport. It asserts that the scheme included representations to V-Tech that it would obtain such subcontracts, even though the defendants intended to keep the subcontracts for themselves. In its complaint, V-Tech argued that the defendants' conduct violated RICO and supported actions under state law for common law fraud, promissory estoppel, breach of contract, and unjust enrichment.

The critical issue on appeal is whether the alleged racketeering acts proximately caused the claimed injuries so as to satisfy RICO standing requirements. See 18 U.S.C. § 1964(c). Because we conclude that they did not, we will affirm the order of the District Court.

**I.**

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review is plenary, Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004), and we treat the allegations of V-Tech's complaint as true. Anderson v. Ayling, 396 F.3d 265, 267 (3d Cir. 2005).

On June 16, 2001, Philadelphia Airport Services ("PAS"), a joint venture between Affiliated Building Services, LLC, General Asphalt Paving Company, and U.S. Facilities, Inc., was awarded a contract to perform services at the Philadelphia Airport that required

specific percentages of subcontracts to be held by "disadvantaged business entities" ("DBEs"). The City of Philadelphia's Minority Business Enterprise Council ("MBEC"), together with the Department of Aviation, certifies minority-owned businesses and women-owned businesses as DBEs.

V-Tech, a minority-owned business, sought to obtain a landscaping subcontract from PAS. Although PAS represented to V-Tech that it would list the company in its initial bid for the airport contract, PAS listed a woman-owned business, American Environmental Cleanup Corp., Inc., instead. A non-DBE named All Seasons Landscaping, however, actually performed the work.

From 2001 to 2003, V-Tech continued to petition PAS for the landscaping subcontract. While PAS repeatedly discussed details with V-Tech and mailed specifications to it in May 2003, PAS never agreed to hire the company.

In its original bid to obtain the airport contract, PAS stated that a minority-owned business, Lowe Engineering, would perform a baggage-maintenance subcontract. Lowe Engineering was not qualified to do the work, and, in September 2002, PAS officially awarded the subcontract to another minority-owned business, Notlim, Inc. At all times, however, PAS performed the job itself.

V-Tech also campaigned to win the baggage-maintenance subcontract from PAS. In December 2003, PAS informed V-Tech that it could be awarded the subcontract if it had the approval of MBEC and the owner of Notlim, Inc., Thomas Milton Street, and if it obtained a union contract. V-Tech received MBEC approval in April 2004. It also paid

3

for and received approval from Street, but it never obtained a union contract.

Despite this, on January 7, 2004, PAS sent V-Tech a proposed baggage-maintenance subcontract. V-Tech began preparations to proceed with the subcontract by, among other things, hiring an employee to manage the subcontract, obtaining an external audit, and creating financial statements. In July 2004, however, PAS told V-Tech that it had decided not to subcontract with it.

On September 22, 2004, V-Tech filed suit, alleging that the defendants were engaged in a pattern of racketeering activity under 18 U.S.C. § 1962(c) and that they had conspired to do so, thereby violating 18 U.S.C. § 1962(d). According to V-Tech, PAS committed predicate acts of mail and wire fraud by mailing its bid to the City of Philadelphia misrepresenting its use of DBEs, mailing materials to the companies PAS claimed to be its subcontractors but who were not actually performing the work, and mailing and emailing proposed contracts and specifications to V-Tech.

**III.**

The federal civil RICO statute allows "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c). Section 1962, in turn, provides in relevant part that:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. (d) It shall be unlawful for any

4

person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)-(d). The term "racketeering activity" is defined in 18 U.S.C. § 1961(1) to include a list of state and federal crimes, among them the crimes of wire and mail fraud alleged here.

The District Court dismissed the complaint finding that V-Tech lacked standing under § 1964(c), which requires a plaintiff to show (1) that he was injured (2) by reason of a violation of § 1962. See 18 U.S.C. § 1964(c).

In Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992), the Supreme Court interpreted § 1964(c) to mean that a RICO plaintiff must demonstrate that a defendant's RICO violation was not only a "but for" cause of his injury, but also that it was the proximate cause. Then, in Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991, 1999 (2006), the Court explained that proximate cause requires a direct relation between the injury claimed and the injurious conduct alleged. Specifically, the Court stated that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Id. at 1998.

Here, the answer is no. V-Tech's RICO claims do not satisfy the requirement of proximate causation because the direct victim of the defendants' fraudulent conduct was the federal, state, and local government entities that awarded and thereafter funded the contract, not V-Tech. PAS represented to the government entities that it was using DBEs

5

as subcontractors at the airport when in fact it was using its own affiliated companies in order to keep the contract payments for itself and other defendants, thereby thwarting the objective of those entities of supporting minority and women-owned businesses.

V-Tech has asserted its own losses: the profits the company would have earned if it had obtained a subcontract and the more than $350,000 it spent in reliance on receiving the baggage-maintenance subcontract. The cause of these losses, however, was not directly related to the alleged RICO violations. Even if PAS had complied with the requirements for hiring DBEs, it may well have not have awarded subcontracts to V-Tech. V-Tech was not the only qualified DBE, and PAS could have subcontracted with minority-owned or women-owned businesses other than V-Tech. Furthermore, the airport contract did not require that all subcontracts be awarded to DBEs, but rather that overall DBE levels be met. In addition, V-Tech had not obtained a union contract, one of the prerequisites established by PAS for the baggage-maintenance subcontract.

**IV.**

The District Court did not abuse its discretion in dismissing V-Tech's state law claims. When a District Court dismisses before trial the claims over which it had original jurisdiction, it "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995); see also 28 U.S.C. § 1367(c) (giving district courts discretion to decline to hear state claims that they would have supplemental jurisdiction to entertain under § 1367(a)).

6

V-Tech has not argued those considerations here.

We will affirm the order of the District Court.