# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 6, 2009

Charles R. Fulbruge III
Clerk

No. 08-20338

OCEANIC EXPLORATION COMPANY, a Delaware Corporation;
PETROTIMOR COMPANHIA DE PETROLEOS, SARL, a corporation organized
under the laws of Portugal,

Plaintiffs-Appellants

v.

PHILLIPS PETROLEUM COMPANY ZOC, a Delaware Corporation; PHILLIPS
PETROLEUM COMPANY INDONESIA, a Delaware Corporation; PHILLIPS
PETROLEUM (96-20) INC, a Delaware Corporation; PHILLIPS PETROLEUM
PRODUCTION INDONESIA INC, a Delaware Corporation; PHILLIPS
INDONESIA INC, a Delaware Corporation; PHILLIPS INTERNATIONAL
INVESTMENT INC, a Delaware Corporation; CONOCOPHILLIPS AUSTRALIA
PTY LTD, an Australian private company organized under the laws of the
Commonwealth of Australia; CONOCOPHILLIPS AUSTRALIA GAS
HOLDINGS PTY LTD, an Australian private company organized under the laws
of the Commonwealth of Australia; CONOCOPHILLIPS JPDA PTY LTD, an
Australian private company organized under the laws of the Commonwealth of
Australia; CONOCOPHILLIPS PIPELINE AUSTRALIA PTY LTD, an
Australian private company organized under the laws of the Commonwealth of
Australia; CONOCOPHILLIPS STL PTY LTD, an Australian private company
organized under the laws of the Commonwealth of Australia;
CONOCOPHILLIPS WA-248 PTY LTD, an Australian private company
organized under the laws of the Commonwealth of Australia;
CONOCOPHILLIPS (03-12) PTY LTD, an Australian private company organized
under the laws of the Commonwealth of Australia; CONOCOPHILLIPS (03-13)
PTY LTD, an Australian private company organized under the laws of the
Commonwealth of Australia; CONOCOPHILLIPS (03-16) PTY LTD, an
Australian private company organized under the laws of the Commonwealth of
Australia; CONOCOPHILLIPS (03-19) PTY LTD, an Australian private
company organized under the laws of the Commonwealth of Australia;
CONOCOPHILLIPS (03-20) PTY LTD, an Australian private company organized
under the laws of the Commonwealth of Australia; CONOCOPHILLIPS (03-21)

PTY LTD, an Australian private company organized under the laws of the Commonwealth of Australia; CONOCOPHILLIPS CO, a Delaware Corporation; CONOCOPHILLIPS, a Delaware Corporation; DARWIN LNG PTY LTD, an Australian private company organized under the laws of the Commonwealth of Australia; PHILLIPS PETROLEUM CO, ZOC PTY LTD, an Australian private company organized under the laws of the Commonwealth of Australia; TOKYO TIMOR SEA, PTY LTD, an Australian private company organized under the laws of the Commonwealth of Australia,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
USDC No. 4:07-cv-00815

---

Before BARKSDALE, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Appellants Oceanic Exploration Company and Petrotimor Companhia de Petroleos, SARL (collectively, "Oceanic") appeal the dismissal, on a motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, of their Second Amended Complaint ("Complaint"). We agree with the district court that Oceanic failed to set forth a plausible theory of proximate causation and accordingly AFFIRM.

## I.    Facts and Proceedings

### A.    Background facts

We set forth the following facts as pleaded in the Complaint, assuming at the present stage, as we must, that they are true. *See Ferrer v. Chevron Corp.,* 484 F.3d 776, 780 (5th Cir. 2007). In 1974, Oceanic obtained an exclusive concession from Portugal to explore for and extract oil and gas in the Timor Gap.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

The Timor Gap is an area of seabed north of Australia and south of the eastern part of the island of Timor. Timor, in turn, is surrounded on all other sides by Indonesia. The Timor Gap is disputed territory. The border across surrounding ocean has been settled by treaty between Indonesia and Australia, but the boundary between East Timor and Australia has not been settled. At the time Oceanic obtained Timor Gap exploration rights from Portugal, East Timor was a Portuguese colony.

In 1975, Indonesia invaded and annexed East Timor, effectively thwarting Oceanic's rights in the Timor Gap. The United Nations refused to recognize the annexation, but Australia collaborated with Indonesia to exploit oil and gas in the Timor Gap and surrounding areas. In 1989, Indonesia and Australia created a "Joint Authority" for this purpose.[1] The Joint Authority awarded Timor Gap exploration and extraction rights to Defendant-Appellee ConocoPhillips (hereinafter referring to ConocoPhillips and its relevant predecessors, subsidiaries, and affiliates). Since that time, ConocoPhillips has extracted large quantities of oil and gas from the Timor Gap and surrounding areas. At the time of the Complaint, known reserves in the Timor Gap were valued above $50 billion.

In 1999, East Timor obtained independence from Indonesia, creating an opportunity for reassessment of the Timor Gap relationships. The United Nations temporarily governed the country through an entity known as the United Nations Transitional Administration in East Timor ("UNTAET"). UNTAET agreed essentially to step into Indonesia's shoes as Australia's counterpart in administering and receiving revenues from the Joint Authority. At the same time, influential politicians in East Timor criticized the historical Australian-Indonesian arrangement as illegal and exploitative and stated that

---

[1] Formally, this entity was known as the "Timor Gap Joint Authority for the Zone of Cooperation."

independent East Timor would not function as Indonesia's successor. The East Timor Constitution, which entered into force on May 20, 2002, stated that independent East Timor would not recognize "acts or contracts" regarding its natural resources that were entered into prior to the constitution's entry into force, unless they were "confirmed by the competent organs after the Constitution enters into force." E. Timor Const. art. 158, para. 3.

On May 20, 2002 (the same day that the constitution took effect), East Timor agreed to the Timor Sea Treaty with Australia. After satisfaction of various formalities, the treaty came into effect on April 1, 2003. It created a "Designated Authority" to replace the prior Joint Authority.[2] One of the Designated Authority's first acts was to enter into numerous production sharing contracts with ConocoPhillips, facilitating ongoing extraction efforts that were predicted to provide billions of dollars of revenue to East Timor. There was no bidding or reassessment; all Designated Authority production sharing contracts were awarded to organizations with previous contracts under the Australian-Indonesian Joint Authority.

Oceanic approached officials in East Timor and unsuccessfully attempted to persuade them to follow a different plan. This would have involved a suit in the International Court of Justice (ICJ), asking the court to declare a border between East Timor and Australia, such that East Timor would acquire sole rights over lucrative production areas in the Timor Gap. Oceanic engaged "[r]espected scholars on international boundaries," who "rendered opinions on the issue on Oceanic's behalf."[3] Oceanic presented the opinions to East Timor, and proposed to fund the litigation itself in exchange for "a revenue interest in the currently producing fields that would come within East Timorese

---

[2] Formally, the "Timor Sea Designated Authority for the Joint Petroleum Development Area."

[3] 2d Amended Compl. ¶ 120.

sovereignty."[4] Oceanic also proposed to build an undersea natural gas pipeline from the Timor Gap to East Timor, to be used instead of a ConocoPhillips pipeline running to Australia. East Timorese officials gave Oceanic cursory attention and rejected the proposals. Australia shortly thereafter withdrew from the maritime boundary jurisdiction of the ICJ.

## B. Proceedings and allegations

Oceanic has attempted by various means to claim a stake in the lucrative Timor Gap oil and gas operations, maintaining that ConocoPhillips illegitimately acquired its rights there. In the early 1990s, Oceanic supported an ICJ suit by Portugal, against Australia and Indonesia, to reassert rights over the Timor Gap. The ICJ ruled 14-2 that it could not reach the merits of the claim, because, as described in the Complaint, "Indonesia, like Australia later, would not submit to the jurisdiction of that court."[5] Oceanic has also attempted, in litigation in Australia and in earlier complaints in the present suit, to assert rights to Timor Gap oil and gas and proceeds, based on its concession from Portugal and its related research and exploration activities in the 1970s. These efforts have failed. Oceanic originally filed the current suit in the United States District Court for the District of Columbia. Prior to transferring the case to its current venue in the Southern District of Texas, the court in the District of Columbia dismissed numerous claims and required Oceanic to re-plead, counseling that it would "view with great suspicion any claims emanating from Portugal's colonial concession." Oceanic then filed the Complaint presently under consideration.

The current theory of the case is not based on historical interests related to the Portuguese concession. Rather, Oceanic asserts that East Timorese independence abrogated ConocoPhillips's rights in the Timor Gap, and that

---

[4] *Id.*

[5] 2d Amended Compl. ¶ 80.

Oceanic was positioned to pull East Timor away from ConocoPhillips, but that ConocoPhillips prevented this by bribing East Timorese officials.

In particular, the Complaint revolves around Mari Alkatiri, "the leader of the largest East Timorese political party, and ultimately Prime Minister for East Timor."[6] As alleged,

> From August 30, 1999, until he was named Prime Minister of East Timor on April 14, 2002, Mari Alkatiri was the Chief Economic Affairs Minister for UNTAET. As Prime Minister, Alkatiri was concurrently the Minister for Development of the Environment. In addition, Alkatiri serves as the titular head of the Timor Sea Designated Authority.[7]

Oceanic alleges that "regardless of the title he may have held" at these various positions, Alkatiri effectively "had direct responsibility for all natural resources in East Timor" and was thus "able to influence" the award of production sharing contracts after the independence vote.[8] The Complaint quotes Alkatiri as stating that his political party "would not legitimatize a treaty between a thief [Indonesia] and the receiver of stolen goods [Australia]," and that "[w]e are not going to be a successor to an illegal treaty."[9] Based on these and similar statements, Oceanic alleges that "East Timorese political leaders, including [Alkitiri], were adamant that East Timor would not recognize any interests that had been awarded in the Timor Gap while Indonesia occupied East Timor, including the ConocoPhillips defendants' production sharing contracts."[10]

---

[6] 2d Amended Compl. ¶ 84.

[7] 2d Amended Compl. ¶ 92.

[8] 2d Amended Compl. ¶ 91.

[9] 2d Amended Compl. ¶ 84.

[10] 2d Amended Compl. ¶ 3. ConocoPhillips counters with other statements by East Timorese leaders in correspondence and media reports, which tend to indicate that, whatever

Oceanic alleges that Alkatiri and his political associates denied Oceanic an opportunity to bid against ConocoPhillips, despite their skepticism of the prior treaty regime, because ConocoPhillips bribed Alkatiri and others. According to the allegations, ConocoPhillips delivered millions of dollars in cash and goods to East Timorese officials in secret transactions and transactions disguised as humanitarian aid. It did so, according to the Complaint, because it feared the political transition could upset its lucrative operations in the Timor Gap.

The Complaint asserts seven causes of action, but only five are still at issue, all arising out of the bribery allegation. They are for: (1) violation and (2) conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act (RICO), (3) violation of the Robinson-Patman Act, and common law (4) intentional interference with prospective economic advantage and (5) unfair competition.[11] Oceanic seeks at least $10.5 billion in damages.

After the case was transferred to the Southern District of Texas, the district court granted ConocoPhillips's motion for judgment on the pleadings and dismissed Oceanic's claims, concluding that Oceanic failed to plead proximate causation. *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, 2008 WL 1777003 (S.D. Tex. Apr. 16, 2008). It accordingly entered a take-nothing judgment, leading to this appeal.

---

their views toward stepping into Indonesia's shoes in the relationship with Australia, East Timorese officials did not intend to disrupt ConocoPhillips's ongoing operations. These statements, however, lie outside the Complaint and are not relevant to the present analysis.

[11] The East Timorese-Australian Designated Authority is listed as a defendant for all of these claims except the tortious interference claim. Oceanic does not appeal the District Court for the District of Columbia's dismissal of the Designated Authority as a party, or the dismissal of its further claims for unjust enrichment and for violation of the Lanham Act.

## II.    Discussion

### A.    Standard of review and Rule 12(c) standard

We review a motion under Federal Rule of Civil Procedure 12(c) *de novo*. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The pleading standard for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6). *Id.* Under that standard, the issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). We accept well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff, but we do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id.* Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

### B.    Analysis

Like the district court, we conclude that Oceanic fails to properly plead proximate causation. Both parties have briefed proximate causation principally under legal authority related to RICO, and Oceanic presents no argument on appeal that any of its other claims could survive dismissal on proximate

causation grounds if the RICO claim does not. We accordingly analyze the issue under authorities applicable to RICO.

RICO is a criminal statute, but its § 1964(c) provides for civil damages for a party "injured in his business or property by reason of" a RICO violation. 18 U.S.C. § 1964. The Supreme Court determined in *Holmes v. Securities Investor Protection Corp.* that this requirement "incorporate[s] common-law principles of proximate causation." 503 U.S. 258, 267 (1992). The Court described proximate causation as including a "demand for some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added).

In *Zervas v. Faulkner*, this court recognized proximate causation in the RICO context as an inquiry into "whether the conduct has been so significant and important a cause that the defendant should be held responsible . . . taking into consideration such factors as the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the casual connection." 861 F.2d 823, 834 (5th Cir. 1988) (quoting *Brandenburg v. Seidel*, 859 F.2d 1179, 1189 (4th Cir.1988)). The causal link cannot "rest only on an overly attenuated chain of inferences." *See id.* at 837.

The district court below concluded that Oceanic failed to plead proximate causation because the alleged bribery, assuming it occurred, could only have caused the alleged harm to Oceanic by means of a highly improbable series of hypothetical events and decisions by the affected countries and entities. It determined that in order for Oceanic to prevail,

> [the] facts must be that if ConocoPhillips had not bribed East Timor:
> (a) East Timor would have chosen to abrogate the concessions, (b)
> Australia would have acquiesced, (c) East Timor would have
> reopened bidding, (d) Oceanic would have been permitted to bid, (e)

Oceanic would have won the bid, and (f) Oceanic would have correctly developed the concession so that it was profitable.

2008 WL 1777003 at *4. The court concluded that the Complaint failed to adequately plead any of these circumstances.

We agree that at least some of these circumstances are not plausibly pleaded in Oceanic's Complaint, and conclude that Oceanic's failure to properly plead one of them in particular requires affirmance.[12] Oceanic's claims fail to rise above the speculative level, because they fail to address the interests and influence of Australia.

Oceanic repeatedly alleges that, absent bribery of Alkatiri, Oceanic would have been allowed to bid, and would successfully have bid, to displace ConocoPhillips's ongoing, multibillion-dollar operations in the Timor Gap. In particular, Oceanic claims in conclusory terms that the East Timor Constitution abrogated ConocoPhillips's contracts, and that Alkatiri had unilateral power to determine whether those contracts would be renewed. These allegations fail the test of common sense plausibility when considered together with other allegations in the Complaint concerning Australia. The quoted portion of the East Timor Constitution merely indicates that contracts over *East Timor's* natural resources were obviated unless reaffirmed. But, as pleaded in the Complaint, the Timor Gap is a "gap" because the border between East Timor and Australia is uncertain—the two countries claim overlapping territory.

Assuming, absent bribery, that East Timor was willing to consider replacing ConocoPhillips with Oceanic, the Complaint presents no reason to believe Australia would have allowed this to happen. To the contrary, the Complaint describes Oceanic and Australia as adversaries at every historical stage. It alleges that Australia defied international opinion and subverted

---

[12] Our decision should not be taken as an endorsement of the district court's opinion in its entirety.

10

Oceanic's Portuguese concession by collaborating with Indonesia after an illegitimate invasion. It alleges that Oceanic supported an unsuccessful ICJ suit to declare that Portugal, rather than Indonesia and Australia, had rights to the Timor Gap. And it alleges, more recently, that Oceanic tried to convince East Timor to turn its back on Australia and build a pipeline to East Timor and a liquified natural gas facility on East Timorese soil, rather than accepting proceeds from a pipeline leading to a new facility in Australia. The Complaint provides no plausible grounds to believe Australia would have desired—or tolerated—disruption of its long-standing, extremely lucrative collaboration with ConocoPhillips in response to East Timor, which Oceanic describes as a "new and impoverished island nation,"[13] replacing Indonesia as its counterpart across the Gap. Thus, even assuming ConocoPhillips attempted to influence East Timor through bribery, the Complaint provides no plausible grounds to conclude that, absent such bribery, Oceanic could have usurped ConocoPhillips's operations.

Indeed, the Complaint implicitly acknowledges that Oceanic had no genuine expectation of disrupting Australia's relationship with ConocoPhillips; it instead alleges that Oceanic tried to convince East Timor to start a formal border dispute and claim large portions of the Timor Gap for itself. The Complaint states that Portugal previously tried to assert rights to the Timor Gap in the ICJ, but that the ICJ rejected the suit because Indonesia did not submit to its jurisdiction. It then alleges that Oceanic's plan involved an ICJ suit against Australia, and that, shortly after Oceanic presented the plan, Australia announced its withdrawal from the jurisdiction of the ICJ for maritime boundaries. This action was consistent with Australia's repeated practice, as described in the Complaint, of dividing the resources of the Timor Gap by

---

[13] Oceanic Br. at 37.

11

treaties with its neighbors, rather than asserting or relinquishing territorial control of the seabed. We have often said that a party cannot state a claim by pleading legal conclusions. *See, e.g.*, *Ferrer*, 484 F.3d at 780. It takes conclusory pleading to new levels to have proximate causation rest on a politically disruptive, hypothetical lawsuit between nations.

Because Oceanic fails to plead facts plausibly demonstrating that it would have had an opportunity to replace ConocoPhillips in the Timor Gap in the absence of bribery, we conclude that the causal link is "overly attenuated," *Zervas,* 861 F.2d at 837, and that the alleged violation did not "le[a]d directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. Accordingly, Oceanic fails to properly plead proximate causation.

## III.   Conclusion

Because Oceanic fails to plead proximate causation, the district court correctly granted the motion for judgment on the pleadings. It is accordingly not necessary for us to consider Oceanic's arguments concerning reassignment on remand or the prior dismissal of claims against certain ConocoPhillips subsidiaries. AFFIRMED.