[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27 2000
THOMAS K. KAHN
CLERK

_____

No. 97-6163

_____

D. C. Docket No. 95-00158-CR-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GOLDIN INDUSTRIES, INC.,
GOLDIN OF ALABAMA INC., et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(July 27, 2000)**

Before CARNES, BARKETT and MARCUS, Circuit Judges.

BARKETT, Circuit Judge:

Goldin Industries, Inc. ("Goldin Mississippi"[1]), Goldin of Alabama, Inc. ("Goldin Alabama"), and Goldin Industries Louisiana, Inc. ("Goldin Louisiana") (collectively the "Goldin Corporations"), appeal their convictions for racketeering activities in violation of the Racketeer Influenced and Corrupt Organizations Statute ("RICO"), 18 U.S.C. § 1962(c), and conspiracy to engage in such activities in violation of RICO § 1962(d). The Goldin Corporations also appeal from the final judgment of forfeiture and order mandating restitution under 18 U.S.C. § 1963(a)(1) and (a)(3) of all proceeds obtained from the racketeering activity.

All three Goldin corporations are in the scrap metal business. They buy and then resell large quantities of ferrous metals such as steel as well as more valuable non-ferrous metals such as stainless steel, brass, copper, and aluminum. Goldin Mississippi was initially started by Rubin Goldin as a cow hide and scrap business in Biloxi, Mississippi in 1942. Rubin Goldin's son, Jack, took over that business in 1950, and three of Jack Goldin's four sons eventually joined the business. Alan ran the steel division and manufacturing, Steven was in charge of the non-ferrous division, and Martin administered the entire business. In 1987, the three Goldin sons purchased a failing scrap business in Mobile, Alabama, which was

---

[1] Throughout the indictment and in proceedings in the district court, Goldin Industries, Inc. is referred to as Goldin Mississippi. In order to avoid confusion, we also refer to that corporation as Goldin Mississippi.

incorporated as Goldin Alabama. In 1990, Jack Goldin and the three sons opened a business in New Orleans, which was incorporated as Goldin Louisiana.

The Goldin Corporations and Jack, Martin, Alan, and Steve Goldin were all charged with violations of § 1962(c) in connection with their schemes to: (1) defraud their large-volume ("industrial") customers by systematically shortweighing these customers' loads of scrap; (2) cheat customers by hiding valuable non-ferrous scrap in loads of less-valuable ferrous scrap; and (3) inflate deductions for no-value scrap in loads of off-grade scrap and trash. In the case of each RICO allegation, the government charged the Goldin corporations with predicate acts, consisting of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. In short, each Goldin corporation was alleged to have violated RICO by sending invoices and checks to the customers who had been cheated in the Goldin Corporations' various schemes. The invoices and checks fraudulently misrepresented the amounts actually due to the victims of these schemes.

Ultimately, the jury acquitted the individual Goldin defendants but convicted all three Goldin corporations of racketeering in violation of 18 U.S.C. § 1962(c) (Count 1)[2] and racketeering conspiracy under 18 U.S.C. § 1962(d) (Count 2).[3]

---

[2] Count 1 consisted of four separate RICO charges, styled RICO 1-4. RICO 1 alleged mail fraud for sending fraudulent checks and invoices in connection with a scheme at all three Goldin corporations to defraud industrial customers by shortweighing the loads brought to the Goldin corporations by approximately 20%, in violation of 18 U.S.C. §§ 1341 and 2. RICO 2 alleged mail

3

Pursuant to 18 U.S.C. § 1963(a)(1) & (3), which provide that any person convicted of violating any provision of § 1962 must forfeit to the United States any interest acquired or maintained in violation of § 1962, the government sought to obtain forfeiture judgments and restitution awards reflecting the amounts that each corporation had derived from its schemes.[4]  After the subsequent one-day forfeiture trial, the district court sentenced all three corporations to five years probation.  In addition, Goldin Alabama was fined $560,000.00, ordered to forfeit $219,849.22 and to pay restitution of $219,849.22 under RICO, 18 U.S.C. § 1963, ordered to forfeit $25,387.94 under the money laundering statute, 18 U.S.C. § 982(a)(1), and

fraud at Goldin Alabama for sending fraudulent checks and invoices to Scott Paper Company in connection with its scheme to hide valuable scrap in less valuable loads of scrap, in violation of 18 U.S.C. §§ 1341 and 2.  RICO 3 alleged mail fraud at Goldin Mississippi for sending fraudulent checks and invoices in relation to its scheme to take fraudulent deductions for no-value scrap in loads of off-grade scrap and trash delivered to it from its customer, Frymaster, in violation of 18 U.S.C. §§ 1341 and 2.  RICO 4 alleged mail fraud at Goldin Mississippi and Goldin Louisiana for sending fraudulent checks and invoices in relation to their schemes to take fraudulent deductions for no-value scrap in loads of off-grade scrap and trash delivered to them from their customer, Pellerin, in violation of 18 U.S.C. §§ 1341 and 2.

[3] Goldin Alabama was also convicted of mail fraud in violation of 18 U.S.C. §§ 1341 and 2 in connection with five mailings to Scott Paper (Counts 9-13); conspiracy to commit mail fraud against Scott Paper in violation of 18 U.S.C. § 371 (Count 14);  money laundering in violation of 18 U.S.C.§ 1956(a)(1)(A)(i) and (a)(1)(B)(i), consisting of payments to Scott Paper's scrap yard manager, James Denson, through a fictitious Goldin Alabama account (Counts 15-24); and conspiracy to commit the same money laundering in violation of 18 U.S.C. § 371 (Count 25). Goldin Alabama does not challenge these convictions on this appeal, nor does it challenge the forfeiture it was ordered to pay in connection with its money laundering convictions.

[4] 18 U.S.C. § 3551(c) permits a court to order a corporate defendant convicted of violating a federal statute to pay fines, forfeiture, and restitution in addition to any other sentence imposed.

4

assessed $3800.00. Goldin Mississippi was fined $1,000,000.00, ordered to forfeit

$419,835.18 and to pay restitution of $419,835.18 under RICO, and assessed

$400.00. Goldin Louisiana was fined $1,000,000.00, ordered to forfeit $47,712.74

and to pay restitution of $47,712.74 under RICO, and assessed $400.00. The

Goldin Corporations now appeal both their convictions under 18 U.S.C. § 1962(c)

and (d) and the forfeiture and restitution judgments under 18 U.S.C. § 1963.

## DISCUSSION

### 1.    RICO Convictions under 18 U.S.C. § 1962(c) and (d)

The three Goldin Corporations raise only one challenge to their convictions.

They argue that they constitute both the "person" and the "enterprise" referenced

in 18 U.S.C. § 1962(c) and, therefore their convictions should be vacated. 18

U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign commerce,
> to conduct or participate, directly or indirectly, in the
> conduct of such enterprise's affairs through a pattern of
> racketeering activity or collection of unlawful debt.

Thus, as the trial court correctly instructed the jury, to convict under § 1962(c), the

government must prove: (1) the existence of an enterprise which affects interstate

or foreign commerce, (2) that the defendant associated with the enterprise; (3) that

the defendant participated in or conducted the enterprise's affairs; and (4) that the

5

participation in or conduct of the enterprise's affairs was through a pattern of racketeering activities. See United States v. Weinstein, 762 F.2d 1522, 1536 (11th Cir. 1985), quoting United States v. Phillips, 664 F.2d 971, 1011 (5th Cir. Unit B 1981).

A "pattern" of racketeering activity requires that a defendant commit two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Racketeering activity is defined as the commission of certain federal crimes, including for our purposes here, the crime of mail fraud pursuant to 18 U.S.C. § 1341. The terms "person" and "enterprise" in the statute have been specifically defined by Congress. A person liable under § 1962(c) is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" under the statute is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Moreover, under our case law, a RICO enterprise need not possess an "ascertainable structure" distinct from the associations necessary to conduct the pattern of racketeering activity. Weinstein, 762 F.2d at 1537, n.13 (rejecting the holding in United States v. Bledsoe, 674 F.2d 647, 665 (8th Cir. 1982), requiring that the enterprise possess such a structure, distinct from the pattern of racketeering activities).

6

The Supreme Court has held that the existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 ( 1981). We have held that Turkette left intact this Circuit's holding in United States v. Elliott, 571 F.2d 880 (5th Cir. 1973),[5] that the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation. Id. at 898. See also United States v. Hewes, 729 F.2d 1302, 1311 (11th Cir.1984) ( "a RICO enterprise exists where a group of persons associates, formally or informally, with the purpose of conducting illegal activity"); United States v. Cagnina, 697 F.2d 915, 920-21 (11th Cir. 1983) (upholding Cagnina's RICO conviction for his participation in an "informal criminal network engaged in racketeering activity").

In this case the Goldin Corporations argue that because each corporation is named as a defendant and is also included in the named enterprise, their convictions under 1962(c) must be vacated. We bifurcated the issues in this appeal

---

[5] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

so that the en banc court could consider the continued viability of United States v.

Hartley, 678 F.2d 961, 988 (11th Cir. 1982), which held that the same person or

entity could be named as both the RICO person and the RICO enterprise under §

1962(c). Hartley has now been overruled by the en banc court. United States v.

Goldin Industries, Inc., __ F.3d __ (11th Cir. 2000) (en banc). Thus, to the extent

that a defendant is both the "person" and the "enterprise," a conviction of that

defendant under § 1962(c) now cannot stand.

The government argues, however, that in this case each corporate defendant

is a person within the meaning of the statute and that the enterprise as it relates to

each corporate defendant is not the same corporation, but rather the association of

all the corporations along with the individual defendants.[6] The government

contends that this group constitutes an entity distinct from each individual

corporate defendant and is the enterprise within the meaning of § 1962(c).

Initially, we recognize that a defendant can clearly be a person under the

statute and also be *part* of the enterprise. The prohibition against the unity of

person and enterprise applies only when the singular person or entity is defined as

both the person and the only entity comprising the enterprise. See Goldin

---

[6] The indictment names each corporate defendant as a person and describes the association-in-fact enterprise as comprised of seven named defendants, Jack Goldin, Martin Goldin, Steve Goldin, Alan Goldin, Goldin Mississippi, Goldin Alabama, and Goldin Louisiana.

Industries, Inc., __ F.3d __;  Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union, 639, 883 F.2d 132 (D.C. Cir. 1989), rev'd in part on other grounds, 919 F.2d 948 (D.C. Cir. 1990) (en banc); Puckett v. Tenn. Eastman Co., 889 F.2d 1481 (6th Cir. 1989); Garbade v. Great Divide Mining and Milling Corp., 831 F.2d 212 (10th Cir. 1987); Bishop v. Corbitt Marine Ways, Inc., 802 F.2d 122 (5th Cir. 1986); Schofield v. First Commodity Corp., 793 F.2d 28 (1st Cir. 1986); Bennett v. United States Trust Co. of New York, 770 F.2d 308 (2nd Cir. 1985); B.F. Hirsch v. Enright Refining Co., Inc., 751 F.2d 628 (3rd Cir. 1984); Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago,  747 F.2d 384 (7th Cir. 1984), aff'd on other grounds, 473 U.S. 606 (1985);  Rae v. Union Bank, 725 F.2d 478 (9th Cir. 1984); United States v. Computer Sciences Corp., 689 F.2d 1181 (4th Cir. 1982), overruled in part, Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir. 1990); Bennett v. Berg, 685 F.2d 1053 (8th Cir. 1982). To find that a defendant cannot be *part* of the enterprise would undermine the purposes of the RICO statute. Indeed, RICO requires that the person be "employed by or associated with" the enterprise.  18 U.S.C. § 1962(c).  Thus, a § 1962(c) defendant may be simultaneously a RICO person and a *member* of the RICO enterprise.  Cullen v. Margiotta, 811 F.2d 698, 730 (2d Cir. 1987).  Although RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or a

9

part of the person, the requirement does not run the other way. <u>Davis v. Mutual Life Ins. of New York</u>, 6 F.3d 367, 378 (6th Cir. 1993). Thus, the fact that each corporation was a defendant "person" and also *part* of the union of corporations which was the enterprise does not as a matter of law preclude a conviction.

The Goldin Corporations argue, however, that because all of the corporate defendants were offshoots of the initial Goldin corporation and had overlapping ownership, they were in reality only one entity and therefore the alleged enterprise was not distinct from the defendant persons. The Goldin Corporations argue that the circumstances here are like those in <u>Discon, Inc. v. NYNEX Corp.</u>, 93 F.3d 1055 (2nd Cir. 1996), and accordingly, we should hold, as the Second Circuit held in <u>Discon</u>, that the three corporations are in reality one and the same.

In <u>Discon</u> the defendants were NYNEX Corp., a holding company, and two of its wholly-owned subsidiaries, MECo, and NYTel. The enterprise alleged was the union of all three corporations. The factual basis for the complaint was an alleged scheme whereby MECo would purchase telephone removal services on behalf of NYTel at inflated prices. NYTel would then overcharge its customers on the basis of these inflated prices. However, at the end of the year, MECo would receive a secret "rebate" from the seller which it would then pass on to NYTel. This scheme enabled MECo. and NYNEX to generate increased revenues derived

10

from NYTel's telephone monopoly. Id. at 1057-58. In that case, however, the Second Circuit found that MECo was not only a wholly owned subsidiary of NYNEX, but its only purpose was to serve as the purchasing agent for NYTel. Unlike other intermediaries such as wholesalers, who may transfer goods and services to a number of different purchasers, MECo did not resell removal services to any other telephone company. Thus, MECo did not compete in the overall market "but only in the 'market' for a single buyer." Id. at 1060. This arrangement, the court found, was analogous to that of an internal purchasing agent. The court noted that had MECo been organized as a purchasing department within NYTel rather than as a separate corporate entity, it would be undisputed that MECo did not compete with Discon. In this context the court held that the corporations were "acting within the scope of a single corporate structure, guided by a single corporate consciousness," id. at 1064, and ruled that "[i]t would be inconsistent for a RICO person, acting within the scope of its authority, to be subject to liability simply because it is separately incorporated." Id.[7]

---

[7] In Fogie v. Thorn Americas, Inc., 190 F.3d 889, 898 (8th Cir. 1999), the Eighth Circuit held that a number of wholly-owned subsidiary corporations cannot be RICO defendants where the parent corporation is named as the enterprise, because a subsidiary cannot be sufficiently distinct from its parent or other related subsidiaries so as to satisfy § 1962(c)'s distinctiveness requirement. On the other hand in Haroco, 747 F.2d at 402-403, the Seventh Circuit held in a civil RICO case that a subsidiary corporation could be liable under § 1962(c) for conducting the affairs of its parent corporation through a pattern of racketeering activities. As this case does not involve wholly-owned subsidiaries conducting a pattern of racketeering activity through an enterprise comprised only of

Rather, we find the more analogous case in the Second Circuit to be

Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2nd Cir. 1995).[8]  There,

the Second Circuit found that notwithstanding common ownership and a common

officer and agent, each distinct corporation could be indicted individually as a

person under § 1962(c) while also being considered jointly as constituting the

enterprise.  Id. at 263.  Charles Schnabolk was the President and owner of Kalon,

one of the corporate defendants.  He was also the principal owner of the other

corporate defendant, Andra, later selling his controlling interest to undisclosed

individuals and served as Andra's Vice President.  Kalon employed between six

and 15 people; Andra had three.  The two companies shared office space and all of

the racketeering acts were performed by Schnablock representing one or the other

of the corporations.  Unlike MECo in Discon, which functioned only to serve as

the purchasing agent of NYTel, the corporations in Securitron were, as the Second

Circuit put it, active, operating, ongoing businesses, each with a presence in the

marketplace, "rather than two stacks of stationery."  Id. at 263.  Here, as in

Securitron, each Goldin corporation is a separate and distinct corporation.  Each is

incorporated in a separate state.  Each is a separate ongoing business with a

themselves and the parent corporation, we take no position on this question.

[8] The Discon court did not cite to Securitron indicating that the court did not see Discon as addressing the same question.

12

separate customer base. Each is free to act independently and advance its own interests contrary to those of the other two corporations.

We are satisfied that under the facts of this case, the Goldin corporations are distinct persons for the purposes of 18 U.S.C. § 1962(c) and that each Goldin corporation is distinct from the association consisting of the union of all three Goldin corporations which comprises the enterprise for the purposes of § 1962(c). We thus find no reason to vacate the corporations' convictions under § 1962(c) on this basis . As the Goldin Corporations' challenge to their conviction for RICO conspiracy under § 1962(d)[9] derived from their challenge to their indictment under § 1962(c), that challenge also fails.

## 2 Challenges to Forfeiture Judgments and Restitution Amounts

### a. Insufficiency of the Evidence as to Goldin Mississippi

Subsequent to the criminal conviction in this case, a judgment of forfeiture against Golden Mississippi was entered in the amount of $319,669.11, half of what the government had requested. Goldin Mississippi was also ordered to pay restitution in the same amount. Goldin Mississippi first argues that the forfeiture judgment and restitution order cannot stand because the government failed to

---

[9] 18 U.S.C. § 1962(d) provides that, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

13

present sufficient evidence of the predicate acts pertaining to the fraudulent invoices and checks mailed to Moss Point Marine, Trinity Marine - Gulfport, and Avondale Gulfport Maine, Inc., relating to the amounts of the forfeiture judgment. Initially, we note that Goldin Mississippi was charged with three sets of predicate acts in Count 1 of the indictment. The RICO statute requires that the government show only two predicate acts. Thus, Goldin Mississippi's criminal conviction under Count 1 of the indictment is still valid based on any two of the other predicate acts alleged, and Goldin Mississippi does not challenge its conviction under § 1962(c) on the sufficiency of the evidence of the predicate acts. The challenge here is only relevant to the determination of the amount of its forfeiture and restitution order.

Sufficiency of the evidence is a question of law to be reviewed de novo. United States v. Suba, 132 F.3d 662, 671 (11th Cir. 1998). In this case, we review the evidence to determine whether "a reasonable jury, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the Government could find the Defendant[s] guilty as charged beyond a reasonable doubt." United States v. Navarro-Ordas, 770 F.2d 959, 966 (11th Cir. 1985).[10]

---

[10] The government contends for the first time on appeal that the correct burden of proof is preponderance of the evidence rather than beyond a reasonable doubt. We have never decided this issue with respect to RICO's forfeiture provision. We need not decide the issue here, however, as the convictions stand even under the higher burden of proof.

14

Although the government's case against Goldin Mississippi is largely based on circumstantial evidence, we have held that a jury is entitled to conclude that a defendant is guilty beyond a reasonable doubt based on "strong circumstantial evidence." Id. at 966. We find the evidence sufficient in this case. The government presented evidence that Goldin-Mississippi had modified its scale equipment to allow weight tickets to be printed without a truck on the scale, to prevent the date and time from being printed on each weight ticket, and to prevent any indication that a weight had been entered manually. [20 R 131-156; 22 R 224.] Goldin Mississippi also used non-sequentially numbered weight tickets. [23 R 21.] These were essentially the same modifications to standard weighing equipment that had been implemented at Goldin's other two locations in furtherance of the shortweighing schemes at those locations. Steven Goldin, who ran Goldin Mississippi, played a central role in training those responsible for carrying out the Goldin Corporations' shortweighing schemes at Goldin Louisiana and Goldin Alabama.

The jury heard considerable evidence of shortweighing at Goldin Mississippi. According to the weighmaster at Goldin Mississippi, Lydia Flettrich, who was not a participant in the Goldin Corporations' shortweighing scheme, once or twice every day, Steven Goldin would prevent her from weighing a load so that

15

he could do so himself. [23 R 21-27.]  Flettrich testified that she saw Steven Goldin printing out weight tickets when there was no truck on the scales. [23 R 25-26.]  Cherlyn Epperly, Steven Goldin's assistant, testified that she would occasionally hear someone, presumably Steven Goldin, using the printer in the evenings after Goldin Mississippi had closed for the day. [23 R 134-137.]  The back-up weighmaster at Goldin Mississippi testified that she saw Steven Goldin shortweigh customers by printing net weights and representing those weights as gross weights. [23 R 80-91.]  Most significantly in terms of establishing that Goldin Mississipi engaged in large-scale shortweighing of industrial customers, Flettrich testified that, for industrial customers, she simply indicated the gross weight on the weight ticket and did not calculate the net weight by subtracting the "tare weight," that is, the weight of the truck. [22 R 221-226.]  She then placed the weight tickets on Steven Goldin's desk, and Steven Goldin would later calculate the net weight. [22 R. 217; 23 R 31-35.]  After law enforcement officers raided Goldin Alabama in August 1992, Goldin Mississippi switched to using sequentially numbered tickets, and its weighmaster was now entrusted with the responsibility of calculating the net weight on industrial weight tickets [36 R 114-115.] , suggesting an attempt to cover-up its illegal activities after Goldin Mississippi realized that the government was aware of the shortweighing scheme.

Evidence was presented that the three industrial customers that were the recipients of the four allegedly fraudulent mailings testified that they did not independently weigh their loads, and that Steven Goldin knew which customers did not weigh their loads. We find that a reasonable jury could have drawn reasonable inferences linking the named mailings to the fraudulent scheme based on the evidence presented at trial. Accordingly, we find no merit to Goldin Mississippi's argument that the government failed to present sufficient evidence of the predicate acts necessary to support the forfeiture judgment.[11]

### b. Admission into Evidence of the Summary Charts

The remaining challenge to the forfeiture judgment and restitution award raised by all three Goldin corporations is that the district court erred by admitting into evidence the summary charts and testimony presented by the government's expert witness regarding the amount of fraudulent proceeds from the shortweighing schemes, thus transforming "the forfeiture proceeding into an unfair 'trial by charts' in which the amount of forfeiture was not supported by sufficient primary evidence." The jury rendered forfeiture verdicts against Goldin Alabama

---

[11] We also find no merit to Goldin Mississippi's argument that the evidence that the government relied on to prove the amount of forfeiture against it for the racketeering activities alleged in Rico Act 3 of Count 1 of the indictment, relating to its improper deductions for no-value scrap in loads of off-grade scrap delivered to it from its customer, Frymaster, did not support the calculations and assumptions offered to the jury during the forfeiture proceedings.

and Goldin Louisiana exactly equal to the amounts sought by the government. In the case of Goldin Mississippi, the jury returned a forfeiture verdict of half the amount sought by the government. The Goldin Corporations contend that the government's summary charts presented during the forfeiture proceeding were inadmissible because they were inaccurate and did not fairly represent the evidence before the jury. Thus, the charts lacked a proper evidentiary foundation.

At the forfeiture proceeding, the government presented only one witness, FBI analyst Lavonda Davis, accompanied by charts summarizing the government's evidence introduced during the guilt/innocence phase of the trial. When the government introduced the charts to which the Goldin Corporations now object, counsel for the Goldin Mississippi, stated "Judge, we've agreed to her charts and she's agreed to ours, Judge." [53 R 61.] Later when the government charts were re-offered with a handwritten addition, counsel for Goldin Louisiana reiterated, "We don't have any objection to them." [53 R 76.] They also raised no objections of Davis' testimony during the forfeiture proceeding. It is clear from the record that the charts from both sides were admitted into evidence with the agreement of all the parties. Under these circumstances, the Goldin Corporations cannot now be heard to challenge their admission.

## CONCLUSION

For the foregoing reasons, the Goldin Corporations' convictions for racketeering and racketeering conspiracy under 18 U.S.C. §§ 1962(c) and (d) and the attendant fines, restitution and forfeiture orders are AFFIRMED.