WARNER, J.
 

 An insurance agent appeals the dismissal of his complaint against various insurance companies and their affiliates, as well as some individuals employed by the affiliates. His claims arise out of his contention that the insurance companies were unauthorized to conduct business in Florida and thus he could not sell their products. His three-count complaint alleged a cause of action under section 624.155(2), RICO violations, and tortious interference. The trial court dismissed all counts. We agree that he has failed to state a cause of action under all three theories pled.
 

 The allegations of the complaint show that appellant Charles Bortell is a licensed life and health insurance agent in Florida. In 1996, International Medical Group, Inc. (“IMG”), a foreign corporation, engaged Bortell pursuant to an agency selling agreement. IMG also contracted with MHG Services, Inc. (“MHG”), a Florida corporation, to sell insurance products developed by IMG and Sirius International Insurance Group (“Sirius”), a foreign insurer. Bortell and Andrew Dudzinski, the managing agent of MHG, developed a specialty market comprised of insurance for the crews of luxury yachts docked in or transiting through Florida. Bortell relied on IMG and Sirius to provide the insurance for these customers. Bortell recruited sub-agents and sold a substantial book of business under this arrangement.
 

 In 2002 Bortell became concerned that IMG was selling its insurance products without the authorization required under the Florida Insurance Code (“FIC”). He expressed his concern to the president of IMG. Although IMG representatives attempted to assure Bortell that their sale of insurance to the crew clients was allowed under the FIC, Bortell advised the crew clients and members of the general marine industry not to sign the forms required by IMG without first seeking legal advice. As a result, IMG terminated the employment agreement with Bortell in February 2003. IMG also threatened Bortell with legal action if he continued to interfere
 
 *1044
 
 with the ongoing services of IMG agents or subscribers. Consequently, Bortell discontinued further involvement with the marine crew insurance business.
 

 The complaint alleges that commencing in 2004, the Department of Financial Services (“DFS”) and the Office of Insurance Regulation (“OIR”) filed various administrative complaints against IMG, Sirius, and some of their agents, alleging that they were not authorized to sell insurance in Florida. IMG and OIR entered into a May 2005 agreement which required IMG to cease and desist soliciting and issuing certificates of insurance in connection with any insured with a Florida address or with any Florida producer eligible for a commission. However, in 2006 DFS found that IMG was in violation of this agreement and other consent orders.
 

 Based upon the foregoing, Bortell filed suit in 2006, alleging three causes of action. First, Bortell sought damages pursuant to section 624.155(2), Florida Statutes, which permits a party damaged by a violation of section 624.401 to file suit against an unauthorized insurer. Bortell alleged that by selling insurance in violation of section 624.401, Florida Statutes, the defendants interfered with the development and maintenance of Bortell’s economic interests. He alleged that their illegal acts “denied reasonable sales and commission to authorized Florida insurers and agents.” Bortell sought actual damages, punitive damages, and attorneys fees.
 

 Count two alleged that the defendants multiple violations of the FIC constituted a pattern of criminal activity prohibited by Floridas RICO laws, chapter 772, Florida Statutes. Count three alleged tortious interference with a business relationship based on IMGs misappropriation of two hundred of Bortells clients after his contract was terminated. Counts two and three sought $320,000 in actual damages for “lost past and future policy commissions” as well as attorneys fees.
 

 All of the defendants moved to dismiss all three counts of the complaint for failure to state a cause of action. They claimed that Bortell lacked standing under count one because he did not qualify as a “party” under section 624.155(2), failed to allege facts sufficient to show a RICO claim under count two, and did not identify any specific business relationships in support of his tortious interference claim under count three. The court dismissed the complaint without prejudice, and Bortell filed an amended complaint with almost the exact same allegations, which the defendants also moved to dismiss.
 

 The court dismissed the amended complaint with prejudice, dismissing count one because Bortell lacked standing under section 624.155, and counts two and three because Bortell was a participant in the illegal conduct, thus, the in pari delicto doctrine barred his claim. With respect to counts two and three, the court explained that Bortell developed his book of business by marketing insurance products created by the companies Bortell now claims were selling insurance in violation of the FIC. From this order Bortell appeals.
 

 We review de novo an order dismissing a complaint for failure to state a cause of action.
 
 Della Ratta v. Della Ratta,
 
 927 So.2d 1055, 1058 (Fla. 4th DCA 2006). This court “must accept the allegations of the complaint as true, but do[es] not defer to the trial court’s conclusions regarding the legal sufficiency of the allegations.”
 
 Id.
 
 (quoting
 
 K.M. v. Publix Super Mkts., Inc.,
 
 895 So.2d 1114, 1116 (Fla. 4th DCA 2005)). Although an in pari de-licto affirmative defense may appear on the face of the complaint, the issue was not raised in any of the various motions to
 
 *1045
 
 dismiss filed by the defendants.
 
 See
 
 Fla. R. Civ. P. 1.110(d). Therefore, the trial court should not have dismissed counts two and three of the complaint based upon an unpled theory.
 
 See Boca Golf View, Ltd. v. Hughes Hall, Inc.,
 
 843 So.2d 992, 993 (Fla. 4th DCA 2003) (“ ‘An issue that has not been framed by the pleadings, noticed for hearing, or litigated by the parties’ is not an appropriate matter for a trial court’s determination.”) (quoting
 
 Gordon v. Gordon,
 
 543 So.2d 428, 429 (Fla. 2d DCA 1989)). Nevertheless, we affirm the trial court’s order for the reasons set forth in the motions to dismiss.
 

 Count one sought to assert a statutory cause of action under section 624.155(2), Florida Statutes.
 
 [1]
 
 Each side agrees that in order to have standing under count one, Bortell must be a “party” as required in section 624.155(2), Florida Statutes, which provides, “Any party may bring a civil action against an unauthorized insurer if such party is damaged by a violation of s. 624.401 by the unauthorized insurer.” The trial court agreed with the defendants and held that “party” refers to a party to an insurance contract. Therefore, Bortell did not have standing as a party in count one.
 

 The legislature did not expressly define the term “party” in the FIC. Where, as in this case, “the legislature has not defined the words used in a phrase, the language should usually be given its plain and ordinary meaning.”
 
 Fla. Birth-Related Neurological Injury Comp. Assn v. Fla. Div. of Admin. Hearings,
 
 686 So.2d 1349, 1354 (Fla.1997).
 
 See also GTC, Inc. v. Edgar,
 
 967 So.2d 781, 785 (Fla.2007) (“The plain meaning of the statute is always the starting point in statutory interpretation.”).
 

 Bortell and the appellees provide two different definitions of “party.” Bor-tell urges this court to adopt the following definitions of party: “[A] person ... taking one side of a ... dispute.”
 
 Metcalfe v. Lee,
 
 952 So.2d 624, 628 (Fla. 4th DCA 2007) (quoting Merriam-Webster OnLine, http://www.m-w.com/dictionary/party); “A person concerned or having or taking part in any affair, matter, transaction, or proceeding.” Black’s Law Dictionary 1122 (6th ed. 1990). The defendants point to the definition of party found in the eighth edition of Black’s Law Dictionary, namely, “[o]ne who takes part in a transaction,” for example, “a party to the contract.” Black’s Law Dictionary 1154 (8th ed. 2004). This definition was actually adopted in the seventh edition, replacing the definition advocated by Bortell.
 
 See
 
 Black’s Law Dictionary 1144 (7th ed. 1999). By that definition, appellees contend that party means a party to a contract, or the insurance contract. We agree.
 

 While the prevailing Black’s Dictionary definition of “party” favors the ap-pellees’ interpretation, even if we were to consider the term ambiguous, we would still conclude that it means a party to the insurance contract. Two rules of statutory construction apply. First, “[t]he legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended.”
 
 Maddox v. State,
 
 923 So.2d 442, 446 (Fla.2006) (quoting
 
 State v. Mark Marks, P.A.,
 
 698 So.2d 533, 541 (Fla.1997)). “When the legislature has used a term ...
 
 *1046
 
 in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded.”
 
 Leisure Resorts, Inc. v. Frank J. Rooney, Inc.,
 
 654 So.2d 911, 914 (Fla.1995).
 

 Here, section 624.155(1) provides, “Any
 
 person
 
 may bring a civil action against an insurer when such person is damaged” in a manner enumerated in section 624.155(1). (emphasis supplied). Section 624.04 defines “person” as “an individual, insurer, company, association, organization, Lloyds, society, reciprocal insurer or interinsurance exchange, partnership, syndicate, business trust, corporation, agent, general agent, broker, service representative, adjuster, and every legal entity.” Section 624.155(2) provides, “Any
 
 party
 
 may bring a civil action against an unauthorized insurer if such party is damaged by a violation of s. 624.401 by the unauthorized insurer.” (emphasis supplied).
 

 When the legislature included the additional cause of action under subsection (2), it knew that “any person” already had the ability to sue for various reasons under subsection (1). The legislature also knew that the definition of “person” encompassed a wide variety of entities. Nevertheless, the legislature chose to use the term “party” instead of “person,” providing strong evidence that the legislature did not intend for the more broad term “person” to apply under subsection (2).
 
 See Mark Marks,
 
 698 So.2d at 541.
 

 A second rule of statutory interpretation which applies requires that “consideration must be accorded not only to the literal and usual meaning of the words, but also to their meaning and effect on the objectives and purposes of the statutes enactment.”
 
 Fla. Birth-Related Neurological Injury Comp. Ass’n,
 
 686 So.2d at 1354. The defendants argue that the purpose of section 624.155(2) is to provide a vehicle by which a party to an insurance contract can sue an unauthorized insurer. In fact, the 2003 bill which created the section was entitled the “Pete Orr Insurance Anti-Fraud Act,” named after an insured who purchased health insurance from an unauthorized insurer and who died of cancer after the insurer failed to pay for any health benefits. Ch. 2003-148, § 1, Laws of Fla. The legislative staff analysis makes no suggestion that the bill was intended to protect insurance agents who sell policies of unauthorized insurers.
 
 See
 
 Fla. S. Comm, on Govtl. Oversight & Productivity, CS for CS for SB 1694 (2003) Staff Analysis (Apr. 15, 2003). Although the analysis appears to use the terms “person” and “party” interchangeably in its commentary, we do not deem this significant where the entire thrust of the bill is to assist insureds, not the insurance agents who sell them the policies.
 

 Finally, as to the individual defendants sued by Bortell in count one, they rightfully point out that under section 624.155(2), a party may make a claim against an
 
 insurer,
 
 not an individual. Therefore, Bortell has no cause of action pursuant to the statute against the individual defendants.
 

 As a second cause of action, Bortell alleges violations of sections 772.104(1), 772.103(3), and 772.102(l)(a)10., Florida Statutes, which are RICO claims. He alleges that the defendants constituted an “enterprise” and engaged in a pattern of criminal activity, namely the unauthorized transaction of insurance in Florida. He was damaged by the loss of both past and future policy commissions from marine crew clients. As previously noted, he alleged that when he discovered that the appellees were unauthorized insurers, he challenged them, and they terminated their agency agreement with him.
 

 
 *1047
 
 Although all of the appellees argue that Bortell has failed to plead each element of a RICO claim, we focus on the requirement that Bortell’s claimed damages must be proximately caused by the RICO violations. Section 772.104(1) provides, “Any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained.... ” Because the Florida RICO Act is patterned after the federal act, Florida looks to federal authorities in construing its own RICO statute.
 
 See Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.,
 
 881 So.2d 565, 570 n. 1 (Fla. 3d DCA 2004). Looking to similar language in 18 U.S.C. § 1964(c) requiring a plaintiff to prove injury “by reason of’ a RICO violation, the Supreme Court concluded that the phrase required application of common law proximate cause requirements and the “demand for some direct relation between the injury asserted and the injurious conduct alleged.”
 
 Holmes v. Sec. Investor Prot. Corp.,
 
 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). The Court has also explained that the compensable injury flowing from a violation of that provision “necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.”
 
 Sedima, S.P.R.L. v. Imrex Co.,
 
 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).
 

 The Supreme Court applied the above reasoning in
 
 Anza v. Ideal Steel Supply Corp.,
 
 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006), in which a corporation sued its competitor alleging that Ideal was harmed in its business by Anza, which undercut its prices by failing to include sales tax in its price and defrauding the New York tax authority by failing to pay the sales tax. Analyzing the injury proximate cause claim, the court explained:
 

 The proper referent of the proximate-cause analysis is an alleged practice of conducting National’s business through a pattern of defrauding the State. To be sure, Ideal asserts it suffered its own harms when the Anzas failed to charge customers for the applicable sales tax. The cause of Ideal’s asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State). The attenuation between the plaintiffs harms and the claimed RICO violation arises from a different source in this case than in
 
 Holmes [v. Securities Investor Protection Corp.,
 
 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) ], where the alleged violations were linked to the asserted harms only through the broker-dealers’ inability to meet their financial obligations. Nevertheless, the absence of proximate causation is equally clear in both cases.
 

 Id.
 
 at 458, 126 S.Ct. 1991. Similarly, in Bortell’s case he alleges that the RICO violation is the insurer’s failure to obtain the necessary approvals from the state and the sale of insurance without those approvals. Thus, the illegal activity was directed toward the state, not Bortell. Bortell’s loss of commission was only indirectly related to the failure of the insurers to obtain the necessary approvals. The direct cause of the loss of commissions was IMG’s termination of Bortell’s agency agreement. That act is not the RICO violation Bortell alleges, nor is the RICO violation an act which targeted Bortell. Thus, it only incidentally caused Bortell harm. Indirect harm is insufficient to sustain a cause of action under the RICO statutes.
 
 Id.
 
 The trial court correctly dismissed Bortell’s claim under RICO.
 

 
 *1048
 
 Bortell’s final claim alleged tortious interference by all of the defendants. Specifically, he states that after the termination of his contract with IMG the defendants solicited and renewed health insurance policies with unauthorized insurers for the marine crew clients through other Florida producers who received commissions. Bortell claimed an advantageous business relationship with this group of “finite marine clients,” but he failed to either define this group further or name a single individual with whom he claimed an advantageous relationship. He claimed that the defendants misappropriated his book of business and his ability to write insurance on authorized insurers, thus depriving him of both past and future commissions. The trial court also dismissed this claim.
 

 The defendants all allege that the complaint is legally insufficient because it does not identify with any specificity the parties with whom Bortell claims interference by merely stating that they constitute a group of “finite marine clients.” We agree.
 

 “The elements of tortious interference with a business relationship are: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship.”
 
 N. Am. Van Lines, Inc. v. Ferguson Transp., Inc.,
 
 639 So.2d 32, 33 (Fla. 4th DCA 1994).
 

 This cause of action requires “a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.”
 
 Ethan Allen Inc., v. Georgetown Manor, Inc.,
 
 647 So.2d 812, 815 (Fla.1994). In
 
 Ethan Allen
 
 a furniture distributor, Georgetown, sued its manufacturer, Ethan Allen, claiming tortious interference with its “customers, past[,] present, and future.”
 
 Id.
 
 at 814. Georgetown contended that its customer base with which Ethan Allen interfered amounted to 89,000 customers. The court concluded that Georgetown did not identify any customers with whom it had an understanding or agreement with which Ethan Allen interfered, explaining:
 

 [I]t is equally clear that Georgetown’s relationship with its past customers was not one upon which a claim for tortious interference with a business relationship could be based. Georgetown had no identifiable agreement with its past customers that they would return to Georgetown to purchase furniture in the future. The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim. Accordingly, Georgetown may not recover, in a tortious interference with a business relationship tort action, damages where the “relationship” is based on speculation regarding future sales to past customers.
 

 Id.
 
 at 815 (footnote omitted). Following
 
 Ethan Allen,
 
 the court in
 
 Sarkis v. Pafford Oil Co.,
 
 697 So.2d 524, 526 (Fla. 1st DCA 1997), affirmed the trial court’s dismissal
 
 of
 
 a complaint alleging tortious interference, because “[t]he amended complaint d[id] not identify the customers who were the subject of the alleged interference.” The court further noted, “The cause of action cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large, yet that is precisely the basis of the claim asserted in this case.”
 
 Id.
 
 at 527.
 

 Similarly, Bortell alleged merely that a finite group of marine crew clients existed without indentifying any actual
 
 *1049
 
 clients with whom he had an agreement which in all likelihood would have been completed but for the defendants’ interference. He does not even allege that he approached these clients with other insurance policies. In fact, he alleges that he quit that business after his termination by IMG. Thus, his own allegations show that he did
 
 not
 
 have any agreements with these clients which would have been fulfilled but for the interference of IMG. He alleges only that he had acquired these clients in the past.
 

 Bortell asserts that the facts found in the complaint were adequately specific to survive a motion to dismiss in light of
 
 Insurance Field Services, Inc. v. White & White Inspection & Audit Service, Inc.,
 
 384 So.2d 303 (Fla. 5th DCA 1980). In that case, a principal sued its agent for tortious interference with its customers when the agent set up his own competing business and essentially pirated all of the principal’s customers away to his own business. The case, however, was not decided on a pleading issue but after jury trial. It gives no guidance on what is required to plead a claim of tortious interference. However, the complaint was largely based upon the proof that the agent actually took work in progress for clients of the principal, the work being specifically identified. Thus, the case involved specific, identifiable clients and agreements with which the defendant interfered.
 

 A second reason exists why Bortell’s “book of business” does not constitute identifiable clients with whom he had a legally protectable business relationship against interference
 
 by these defendants.
 
 Bortell alleges that he acted under an agency agreement with IMG. He developed the insurance product with MHG, an IMG affiliate, and the other defendants associated with MHG. A tortious interference claim exists only against persons or entities who are not parties to the contractual relationship.
 
 Franklin Life Ins. Co. v. Davy,
 
 753 So.2d 581, 587 (Fla. 1st DCA 1999). Bortell cannot sue his principal, IMG and its insuring companies for tor-tious interference where he alleges that he acted as their agent in developing and selling these policies, and the insurance entities are themselves parties to the contracts. As to the individual defendants, Bortell has failed to allege how each of them interfered with his advantageous business relations.
 

 Because Bortell has already been given the opportunity to amend his complaint to correct this very deficiency and has failed to do so, we affirm the trial court’s dismissal of his cause of action with prejudice.
 

 POLEN and MAY, JJ., concur.
 

 [1]
 

 . Although the parties have not pointed this out, we cannot help but note that section 624.155(2) did not become law until after Bortell’s contract with IMG was terminated.
 
 See
 
 ch. 2003-148, § 2, Laws of Fla. We think it is highly unlikely that he could state a cause of action based upon a statute which was not in existence at the time of his dealings with the appellees.