[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10661
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-24918-JEM

DIANA BERBER,

                                        Plaintiff - Appellant,

versus

WELLS FARGO, NA,
MARSHA PAINTER,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 8, 2020)

Before WILSON, WILLIAM PRYOR, and MARCUS, Circuit Judges.

PER CURIAM:

Diana Berber appeals from the district court's orders granting summary

judgment on one count, granting a motion to dismiss on another, and striking a claim

for punitive damages from her complaint, in a lawsuit she filed involving allegedly fraudulent consumer practices by her former employer, Wells Fargo, NA.   On appeal, Berber argues that the district court erred in: (1) granting summary judgment on her state law retaliation claim, which she brought under the Florida Whistleblower Act ("FWA"), Fla. Stat. §§ 448.101-105; and (2) dismissing her claim under the "Florida RICO" statute, Fla. Stat. § 772.103, for failure to state a claim.   Berber also requests that this Court certify a question of statutory interpretation to the Florida Supreme Court, relating to the availability of punitive damages under the FWA.   After thorough review, we affirm the district court's rulings, and reject as moot the certification request.

I.

We review a district court's decision granting summary judgment de novo. Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000). We construe all facts and draw all reasonable inferences in favor of the non-moving party. Id. If, after we do so, no genuine dispute of material fact remains, summary judgment is proper. Id.

We also review the district court's grant of a motion to dismiss de novo. Boyd v. Warden, Holman Correctional Facility, 856 F.3d 853, 863–64 (11th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

2

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  While we do accept plausible allegations as true, we need not do the same for mere legal conclusions; a complaint "must include enough facts to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Boyd, 856 F.3d at 864 (quoting Twombly, 550 U.S. at 555).

## II.

The relevant facts, which are either undisputed or resolved in favor of Berber, who is the non-moving party, are these.  Diana Berber was hired by Wells Fargo as a Personal Banker in Fort Lauderdale, Florida in July 2013.  Her employment continued until her termination on March 18, 2014.  In her termination letter, Wells Fargo explained that Berber had not met performance expectations for her position, and had not performed what were termed "daily activities to attain sales goals."

Two years after her termination, Berber filed this lawsuit in Florida state court alleging a violation of the FWA and the Florida RICO statute.  Wells Fargo removed to the United States District Court for the Southern District of Florida under diversity jurisdiction.  28 U.S.C. § 1332(a).  In between Berber's termination and initial complaint, the federal government's Consumer Financial Protection Bureau

("CFPB") investigated Wells Fargo for fraudulent sales practices, and Wells Fargo ultimately reached a settlement with the CFPB. Berber generally claims she was fired for refusing to participate in these sales practices, which allegedly included opening accounts and applying for credit cards on behalf of consumers without their action or consent. The district court dismissed Berber's Florida RICO allegation for failure to state a claim, and later granted summary judgment on her FWA retaliation claim. This timely appeal follows.

### III.

First, we are unpersuaded by Berber's argument that the district court erred in granting summary judgment on her FWA claim. The FWA provides, in relevant part, that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . (3) [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102. A retaliation claim under the FWA is guided by the same analysis as a Title VII federal claim. See, e.g., Sierminski, 216 F.3d at 950. Accordingly, a plaintiff claiming retaliation under the FWA must establish a prima facie case by demonstrating: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action;[1] and (3) the two are causally related. See Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir.

---

[1] The adverse employment action prong is not at issue in this case.

4

1998).  The burden then switches to the defendant to offer a legitimate reason for the adverse action; if the defendant can do so, the plaintiff then must prove that the proffered reason is "mere pretext" for prohibited, retaliatory conduct.  Id.; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973).

In the operative complaint, which has been amended four times, Berber claims she was terminated in violation of the FWA in retaliation for refusing to increase her sales figures through the fraudulent opening of accounts for consumers, based on the allegations Wells Fargo settled after her termination.  However, Berber admits she never was personally asked to engage in any fraudulent sales practices or directly encouraged to do so; she was not even aware any fraud was taking place at the time. She says she was inappropriately judged on her lower sales record against coworkers with high sales, whom she "suspected" of engaging in fraud, but offers no support for her suspicion that her coworkers in fact engaged in fraudulent practices.

Berber seems to be arguing that she was indirectly pressured to engage in fraud, because the sales goals were so high as to be otherwise unattainable.  But she admits she was unaware that the sales conduct was potentially illegal, and that she never reported any activity to management or outside of the company.  Berber also admits she never refused a request to engage in fraud.  Berber says she "refused to participate" in opening accounts for individuals who may not have needed them, but admits there was "never an instance" where she was asked to engage in any type of

5

fraudulent activity. Instead, she felt vaguely "pressured to generate sales." The district court granted summary judgment on Berber's FWA claim, holding that Berber failed to demonstrate that she "objected or refused to participate" in any illegal activity. We agree.

A key element for any retaliation claim is to identify precisely the protected activity that is being retaliated against. Berber's claim fails here because there is nothing in the record that creates a genuine issue of material fact that Berber ever "refused" to do anything. She was never asked to commit fraud, never spoke out against any alleged fraud being committed at the company, and, at the time, never even knew the practices in question might be illegal. She also did not know fraud was being committed by her coworkers, but "suspected" it was. At most, Berber has alleged she felt "pressured" to increase her sales goals, but importantly, this pressure was never characterized as pressure to commit <u>fraud</u>. It is a momentous leap to claim that a failure to respond to general pressure to increase sales somehow transforms into an active refusal to commit fraud under the FWA.

As for Berber's suggestion that passive inaction is sufficient to qualify as a "refusal" or objection under the FWA (or Title VII), we are unpersuaded. Berber focuses on the phrase "refused to participate," claiming she refused to engage in fraud to increase sales. However, the word "refuse" (when, as here, it's used with an infinitive, like "to participate") is defined as: "to show or express a <u>positive</u>

6

unwillingness to do or comply with." Webster's Third New International Dictionary 1910 (2002). Under no interpretation of the facts did Berber express any "positive unwillingness" to participate in the alleged fraud. At most, she felt vaguely "pressured" to increase her sales, and she did not engage in illegal acts to alleviate this pressure. This can hardly be characterized as a "positive unwillingness" to engage in fraud, when she did not claim she was being specifically pressured to commit fraud in the first place.

The flaw in Berber's interpretation is also revealed by the purpose of the FWA. The Florida Supreme Court has ruled that the FWA aims to achieve the same goal as a similar Florida law regarding public employees: "to encourage the elimination of public corruption by protecting public employees who 'blow the whistle.'" Arrow Air v. Walsh, 645 So. 2d 422, 424 (Fla. 1994) (quotations omitted).[2] That is, the FWA is aimed at encouraging employees to speak out and act when they witness illegality. Standing by and taking no action does not increase illegal activity, but it also clearly does not "eliminate" it.

Under both the plain meaning of the word "refuse," as well as the FWA's goal to encourage the active elimination of illegality, Berber's argument about passive

---

[2] Like the private employee provision at issue here, the public employee counterpart tracks the language in the FWA as well, protecting employees who "refuse to participate" in activity prohibited by the law. Fla Stat. § 112.3187(7).

inaction falls flat.[3]  Thus, because Berber has not identified any protected activity she took to "object or refuse to participate [in]" against illegal activity, she has failed to establish a prima facie case of retaliation under the FWA.

But even if Berber had established a prima facie case of retaliation, she has failed to rebut Wells Fargo's proffered legitimate reasons for her termination as pretext.  Berber appears to argue that because she was unable to meet the sales goals, it was impossible to meet the goals without engaging in fraud.  However, many other legitimate explanations exist: higher effort by her coworkers, more time invested, pre-existing relationships with potential customers, or simply an aptitude for sales.  Berber has offered nothing to support the idea that the sales goals were only attainable through fraudulent means.  Without offering more specificity, Berber has not rebutted the proffered reason for her termination: she failed to meet her sales goals.

---

[3] Berber's cited authority is unpersuasive.  In Kearns v. Farmer Acquisition Co., a car salesman was terminated after complaining to management that the dealership was not inspecting its cars before sale, among other questionable practices.  157 So. 3d 458 (Fla. Dist. Ct. App. 2015).  However, we can easily identify the objection the plaintiff took: he repeatedly and explicitly made complaints about the illegality of the actions.  Id. at 461–62.  Thus, that case does not help Berber's argument.   Her second citation, Aery v. Wallace Lincoln-Mercury, LLC, is unpersuasive for the same reason: the plaintiff there had a sit-down meeting with management to discuss an illicit part-switching scheme.  118 So. 3d 904, 907–08 (Fla. Dist. Ct. App. 2013).  Lastly, Berber's citation to United States v. Stein fares no better; Stein stands for the proposition that an affidavit need not be disregarded merely because it is self-serving, but rather the self-serving element should be weighed alongside the rest of the affidavit by the finder of fact.  881 F.3d 853, 858 (11th Cir. 2018).  Here, we are not weighing evidence at all: even after taking any genuine factual dispute in Berber's favor, she still has not alleged any active refusal or action taken in opposition to illegality.

Indeed, if anything, the record reveals additional legitimate justifications for her firing. For example, Berber was cited for arriving to work late, failing to arrange appointments with potential customers, and failing to organize out-of-office events to generate sales. When we consider these reasons as a whole (all of which relate to sales, the stated reason for her termination), Berber has not shown a genuine dispute of material fact indicating that her failure to meet sales goals was a pretext for her termination. Because Berber has no proof that fraud was required to meet the bank's demands, and because ample evidence supports a legitimate reason for her termination, we affirm the district court's grant of summary judgment on this claim.

We are also unconvinced by Berber's argument that the district court erred in dismissing her claim under Florida's RICO statute, which alleged that an enterprise of Wells Fargo, its parent company, and Berber's supervisor committed fraud on customers, resulting in Berber's injury through her termination. Florida's RICO statute is largely modeled after the federal version and requires similar elements: (1) conduct of (2) an enterprise (3) through a pattern (4) of criminal activity. Fla. Stat. § 772.103; see also, e.g., Gross v. State, 765 So. 2d 39, 42 (Fla. 2000) ("Given the similarity of the state and federal statutes, Florida courts have looked to the federal courts for guidance in construing RICO provisions."); Bortell v. White Mts. Ins. Grp., Ltd, 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009). Like the federal version, Florida courts have required a showing of proximate cause between the claimed

9

injury and the predicate criminal act.  See Bortell, 2 So. 3d at 1047; see also Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992).

Here, the district court dismissed Berber's argument for failure to state a claim -- that is, the failure to plausibly allege proximate cause between her injury (termination) and the predicate criminal act (committing fraud on customers). While the sometimes-nebulous proximate cause analysis has frustrated courts for generations, the facts as pled are beyond any reasonable definition of proximate cause.

In Wells Fargo, we explained that for a statutory claim arising under the Fair Housing Act, foreseeability of injury alone is not sufficient to satisfy proximate cause.  Instead, we must also identify "some direct relation between the injury asserted and the injurious conduct alleged."  City of Miami v. Wells Fargo & Co., 923 F.3d 1260, 1264 (11th Cir. 2019) (citing Bank of Am. Corp. v. City of Miami, 137 S. Ct. 1296, 1306 (2017)).  That is, "while foreseeability ensures 'cause,' 'some direct relation' ensures that the cause is sufficiently 'proximate.'"  Wells Fargo, 923 F.3d at 1272.  We ask if there is "a direct, logical, and identifiable connection between the injury sustained and its alleged cause. If there is no discontinuity to call into question whether the alleged misconduct led to the injury, proximate cause will have been adequately pled."  Id. at 1264.   Further, the analysis will "depend[] in

10

part on the 'nature of the statutory cause of action.'" Id. at 1272 (citing Bank of Am., 137 S. Ct. at 1306).

Specific to RICO, the Supreme Court has long required that there be "some direct relation" between the claimed violation and resulting injury. Holmes, 503 U.S. at 268. In Holmes, the Supreme Court explained that "[a]llowing suits by those injured only indirectly would open the door to massive and complex damages litigation," so "RICO's remedial purposes would more probably be hobbled than helped" by a relaxed proximate cause standard. Id. at 274. The Supreme Court reiterated this standard of causation in Anza, a RICO case where the plaintiff claimed injury resulting from a competitor failing to charge sales tax. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453–55 (2006). In Anza, again, the Supreme Court concluded that proximate cause was lacking, because the "direct victim" of the RICO violation was the state tax collector, not the plaintiff. Id. at 458. The Court explained that the cause of the alleged harm (losing business due to a competitor's lower prices) was "entirely distinct from the alleged RICO violation (defrauding the State)," and that any connection between the two was "attenuated." Id. at 458–59. Accordingly, our case law is clear: for a RICO claim, the plaintiff must identify "some direct relation" between the injury and alleged RICO violation.

Viewing Berber's allegation in the most generous light possible, she fails to state a claim for relief. Berber argues the following chain under Florida RICO: The

11

predicate conduct was that Wells Fargo allegedly committed fraud on its customers by opening unrequested accounts in their name. The "enterprise" was between Wells Fargo, its parent company, and Berber's supervisor.[4] The "pattern" was ongoing fraud against customers. The "injury" was Berber's termination and its corresponding consequences.

Even under a generous construction of proximate cause, Berber's injury was disconnected from the alleged conduct against Wells Fargo customers. At best, Berber's termination was an unrelated consequence many steps down the causal chain. Compare her claim to the facts in Wells Fargo. There, the casual chain was easy to identify: Redlining leads to higher foreclosures. Higher foreclosures lead to less tax revenue. Or, compare to Anza: A company fails to pay enough taxes, letting them sell their own products for less, leading to a competitor's loss of revenue. 547 U.S. at 453–55. That causal chain was far simpler than Berber's, and even there the Supreme Court found it insufficient. Here, Berber says that as a side effect of the fraud on customers, she was fired for not similarly committing fraud. This is, at best, a tenuous causal chain, and her own actions relating to coming into work late

---

[4] The district court noted that an "enterprise" likely does not exist between Berber's supervisor, Wells Fargo N.A. (subsidiary), and Wells Fargo & Company (parent). The definition of "enterprise" under both federal and Florida RICO is a hotly disputed area of law among the federal circuits. Since Berber's claim fails on other grounds, we need not address this issue. See United States v. Goldin Indus., 219 F.3d 1271, 1276 n.7 (11th Cir. 2000) (declining to rule on whether a parent/subsidiary relationship qualifies as an enterprise).

12

and failing to conduct sales events likely sever whatever thin connection might have existed.

Berber argues that <u>Wells Fargo</u> somehow <u>lowers</u> the bar to find proximate cause. We are unpersuaded: the Supreme Court required us to <u>increase</u> our scrutiny of proximate cause by analyzing not only foreseeability, but also whether there was "some direct relation." <u>See</u> <u>Wells Fargo</u>, 923 F.3d at 1264 ("The [Supreme] Court held that the standard that this panel had applied -- foreseeability -- was not enough on its own to demonstrate proximate cause."). Further, RICO claims have long required "some direct relation" between the injury and alleged RICO violation. <u>See</u> <u>Holmes</u>, 503 U.S. at 268. Berber's claim fails because allegedly defrauding banking customers neither foreseeably leads to firing an employee, nor does it have any direct relation. Despite its ever-expanding scope, RICO was never intended to allow for sprawling civil causes of action. The Supreme Court in <u>Anza</u> expressly said there was "no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly." 547 U.S. at 460. Creative utilization of RICO notwithstanding, under no interpretation could we envision the intent of the law to allow for liability under Berber's remote casual chain.[5] Accordingly, even

---

[5] Berber's other authority is also unhelpful. In <u>Burgese v. Starwood Hotels & Resorts Worldwide, Inc.</u>, a district court case in the Third Circuit, hotel staff had been involved in a prostitution scheme, and the plaintiff brought a RICO claim after being assaulted by prostitutes in the hotel lobby. 101 F. Supp. 3d 414, 418 (D.N.J. 2015). Regardless of the accuracy of the proximate cause analysis in that case, Berber's causal chain is far less direct than the resulting injury there. <u>Id.</u> at 426.

under a generous pleading standard, Berber has failed to plead a plausible claim under RICO.  We again must affirm.

Last, Berber asks us to certify a question about the availability of punitive damages under the FWA to the Florida Supreme Court.  Since we've rejected Berber's FWA retaliation claim, we deny this request as moot.  But even if we had ruled otherwise, we would still deny the request.  Certification to a state supreme court is warranted when "substantial doubt exists about the answer to a material state law question."  Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1039 (11th Cir. 2014) (citation omitted).  As the district court explained, the answer here is clear: The FWA explicitly outlines the types of relief available, and punitive damages did not make the list.  See, e.g., Branche v. Airtran Airways, Inc., 314 F. Supp. 2d 1194, 1197 (M.D. Fla. 2004); Hanna v. WCI Cmtys., Inc., 348 F. Supp. 2d 1332, 1333 (S.D. Fla. 2004).[6]

---

Berber also offers K.T. v. Royal Caribbean Cruises, Ltd., 931 F.3d 1041 (11th Cir. 2019).  But K.T. was not a RICO case, and the Court found proximate cause when a cruise ship breached its duty to guard an underage, intoxicated passenger from going to a cabin with a group of men. Again, the causal chain there (overserving and failing to protect an underage passenger) was at least somewhat related to the resulting injury (sexual assault).  Those facts are distinct from Berber's.

[6] Berber cannot claim that punitive damages were intended to be included as a residual catchall, because the statute already contains one, allowing "[a]ny other compensatory damages allowable at law."  Fla. Stat. § 448.103 (emphasis added).

**AFFIRMED.**[7]

---

[7] In addition, we DENY Berber's motion to take judicial notice of the Wells Fargo settlement as irrelevant, because even if we assume Wells Fargo settled claims of fraud, our evaluation of Berber's claims does not change.