[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15336
_____

D.C. Docket No. 5:09-cv-01563-CLS


AUDREY BROUSSARD,
DARLENE HARBIN,
on behalf of themselves and all those similarly situated,

                                                      Plaintiffs-Appellants,

versus

WADE MAPLES,
JOHN MAPLES,
MARK MAPLES,
HOWARD MOORE,
GINA MATEO,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 28, 2013)

Before CARNES, Chief Judge, TJOFLAT, Circuit Judge, and MARRA,[*] District Judge.

PER CURIAM:

Audrey Broussard and Darlene Harbin, two former hourly-wage employees at a rug manufacturing plant operated by Maples Industries, Inc., brought a putative class action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., against the owners and several human resources personnel of the company, which is based in the small rural town of Scottsboro in Jackson County, Alabama. The plaintiffs, asserting their civil RICO claims on behalf of themselves, and attempting to do so on behalf of all legally authorized, hourly-wage workers employed by Maples since August 2005, alleged that the defendants conspired to hire large numbers of illegal immigrants and falsely certify I-9 work-authorization forms in order to drive down wages at Maples and thereby increase the company's profits. In support, the plaintiffs submitted reports from a purported immigration expert, Edward Mallon, and a professor of economics at Harvard's Kennedy School of Government, Dr. George J. Borjas. Dr. Borjas' report, which was the plaintiffs' only evidence of causation, concluded that

---

[*] Honorable Kenneth A. Marra, United States District Judge for the Southern District of Florida, sitting by designation.

Maples' hiring of illegal immigrants depressed real hourly wages at the company by 2.3% over a period of years.[1]

The district court, on the defendants' motion, struck Dr. Borjas' report in its entirety and Mallon's report in part as not sufficiently reliable under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993). The court found that Dr. Borjas' report failed to satisfy the reliability requirements of Rule 702 for two distinct reasons: (1) his use of Hispanic enrollment figures for the Jackson County and Scottsboro school districts as a proxy for the total number of immigrants, legal and illegal, in the local workforce was novel and untested; and (2) existing economic scholarship, including Dr. Borjas' own peer-reviewed academic work, did not show that the impact of immigration on wages could reliably be measured at the level of single firm, instead of at the level of the national economy as a whole. The court then granted summary judgment in favor of the defendants, concluding, among other things, that without Dr. Borjas' report the plaintiffs had not presented any evidence to support a finding that the alleged RICO violations proximately caused the asserted

---

[1] Dr. Borjas' conclusion was based on the basic economic premise that, absent other factors, an increase in the size of the local workforce lowers the wages of competing workers by increasing the supply of workers from which a company can hire. In order to measure the effect of immigration changes in the size of the local workforce on the wages paid by Maples, Dr. Borjas stated in his report that he had to measure and compare three key variables: (1) the "immigration-induced increase in the number of potential workers in the local area"; (2) the real hourly wages paid by Maples over the four-year class period; and (3) the number of "person-hours" worked by Maples' employees during that time.

depression in hourly wages at Maples.  See Anza v. Ideal Steel Supply Corp., 547

U.S. 451, 457, 126 S.Ct. 1991, 1996 (2006) (holding that plaintiffs asserting a civil

RICO claim must show that the predicate acts were both the "but for" and

proximate cause of their injuries).

The plaintiffs now challenge the district court's exclusion of their experts'

reports, either in whole or in part, and the grant of summary judgment in favor of

the defendants, though they concede that their claims cannot survive summary

judgment if the district court did not abuse its discretion in striking Dr. Borjas'

report.[2]  For the reasons stated in the district court's meticulous and carefully

reasoned opinion, we affirm the grant of summary judgment and the exclusion of

Dr. Borjas' expert report based solely on his use of Hispanic school enrollment

data as a proxy for the size of the available immigrant workforce in the Scottsboro

and Jackson County areas.  In light of the plaintiffs' concession that they cannot

withstand summary judgment on their RICO claims in the absence of Dr. Borjas'

report, we need not address their additional arguments challenging the partial

exclusion of Mallon's report and other aspects of the district court's summary

judgment ruling.  See United States v. Cameron, 907 F.2d 1051, 1059 (11th Cir.

1990) ("Error in the admission or exclusion of evidence is harmless if it does not

---

[2] A district court's decisions regarding the reliability and admissibility of expert testimony are reviewed for an abuse of discretion.  United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).  District courts enjoy "considerable leeway" in making these determinations and we must defer to their judgments unless they are manifestly erroneous or based on a wrong legal standard.  Id. at 1258–59.

affect the substantial rights of the parties.") (quotation marks omitted).  We do, however, need to discuss two arguments raised by the plaintiffs concerning the exclusion of Dr. Borjas' report that the district court did not have an opportunity to address.

## I.

The first of those arguments is the plaintiffs' contention that the district court abused its discretion by failing to give them prior notice of its specific concerns about the reliability of Dr. Borjas' report and an opportunity to respond to those concerns.  As the plaintiffs note, the defendants' motion to strike did not substantively challenge the reliability of Dr. Borjas' methods, other than his reliance on Mallon's estimate that approximately 15% of Maples' employees were not authorized to work in the United States.  The plaintiffs, however, bore the burden of establishing the reliability of its expert's report and the district court was obligated to perform "the critical 'gatekeeping' function" mandated by Rule 702 to ensure the reliability of Dr. Borjas' methods.  See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (explaining that "Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence" by ensuring "the reliability and relevancy of expert testimony") (quotations marks and emphasis omitted); Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1107 (11th

Cir. 2005) (emphasizing that the proponent of expert testimony bears the "burden of laying the proper foundation for [its] admission" by demonstrating that the expert is "qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact") (quotation marks omitted).  And in carrying out its gatekeeping responsibility, the district court was under no obligation to hold a Daubert hearing or otherwise provide the plaintiffs with an additional opportunity to lay a proper foundation for the admissibility of Dr. Borjas' report, at least not under the particular circumstances of this case.  See Cook, 402 F.3d at 1113 (explaining that district courts are not required to hold Daubert hearings to give the proponents of expert testimony an additional opportunity to meet their burden of establishing the reliability of that testimony).  As plaintiffs' counsel conceded at oral argument, under the particular circumstances of this case, they were aware of the district court's concerns and "[w]e knew [the exclusion of the report] was coming, yes we did judge, yes we did."

## II.

The second argument that the district court did not have an opportunity to address is the plaintiffs' assertion that it applied the wrong legal standard when it evaluated Dr. Borjas' reliance on Hispanic school enrollment data under Rule 702, instead of Rule 703 of the Federal Rules of Evidence.  The plaintiffs contend that,

6

under Rule 703, Dr. Borjas was entitled to base his opinion on Hispanic school enrollment figures because it is the type of data that economists would reasonably rely upon.

The plaintiffs' argument misconstrues the respective roles of Rules 702 and 703, as well as the nature of the district court's objections to Dr. Borjas' use of the school enrollment figures as a proxy for the local immigrant population.  Rule 702, which governs the admissibility of expert testimony, provides that an expert witness may offer opinion testimony if (1) the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; see also United States v. Jayyousi, 657 F.3d 1085, 1106 (11th Cir. 2011) ("Rule 702 of the Federal Rules of Evidence controls the admission of expert testimony.").  Rule 703, by contrast, allows an expert to base his opinion on facts or data that would otherwise be inadmissible, such as hearsay, if other "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion."  Fed. R. Evid. 703; see also United States v. Steed, 548 F.3d 961, 975 (11th Cir. 2008). That rule does not supplant the district court's obligation under Rule 702 to ensure

that an expert's opinion, regardless of the admissibility of the facts or data relied on, is the product of reliable methods and principles.

The Advisory Committee Notes accompanying Rule 702 shed light on the proper relationship between Rules 702 and 703:

> Rule 702 sets forth the overarching requirement of reliability, and an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion.  In contrast, the "reasonable reliance" requirement of Rule 703 is a relatively narrow inquiry.  When an expert relies on inadmissible information, Rule 703 requires the trial court to determine whether that information is of a type reasonably relied on by other experts in the field.  If so, the expert can rely on the information in reaching an opinion.  However, the question whether the expert is relying on a <u>sufficient</u> basis of information — whether admissible information or not — is governed by the requirements of Rule 702.

Fed. R. Evid. 702, Advisory Committee's Notes (2000 Amendments).  Here, the district court did not take issue with the admissibility of the Hispanic school enrollment data Dr. Borjas relied on in forming his opinion, nor did it even question the quality or accuracy of that data.  Instead, the court took issue with the reliability of Dr. Borjas' methodological use of that data as a proxy for the influx of immigrants into the local labor market.  The question of whether certain data (Hispanic student enrollment), admissible or otherwise, provides a sufficient basis for inferring some additional fact crucial to an expert's opinion (the size of an increase in the available immigrant workforce) is properly governed by Rule 702.  As the plaintiffs acknowledge elsewhere in their appellate brief, "the admission of

8

expert witness testimony is governed by [Rule] 702," and the "crux" of Dr. Borjas' opinion was that the influx of immigrants into Jackson County, which he used school enrollment figures to calculate, enabled the defendants to pay below-market wages to their employees.

The plaintiffs' only argument to us about the district court's application of Rule 702 to the use of the school enrollment data is that the rule should not have been applied at all, that only Rule 703 mattered. Disagreeing with that position, we conclude that the plaintiffs have failed to show that the district court abused its discretion in excluding Dr. Borjas' report on that basis. Because Dr. Borjas' opinion on causation hinged on his ability to accurately measure and compare three key variables, one of which was the "immigration-induced increase in the number of potential workers in the local area," we need not address the soundness of the district court's additional reason for striking his report.

**AFFIRMED.**